SCRANTON, KOLB & Co., plaintiffs in error, vs. RENTFROW & BROTHER, defendants in error.

Evidence sufficient to support the verdict.

Assumpsit, in Fayette Superior Court.    Tried before Judge BULL, March Term, 1859.

This was an action of assumpsit by Scranton, Kolb & Co., merchants of Augusta, Georgia, against Stephen Rentfrow and Bucket Rentfrow, partners in trade, under the name and style of Rentfrow & Brother, on several promissory notes, amounting in the aggregate to about six hundred and twenty dollars.    All the notes were signed, "*Rentfrow & Bro.*"

The issue submitted to the jury, was upon the plea of Bucket Rentfrow, one of the defendants, who pleaded, that at the time said notes were given, he was not a partner of Stephen Rentfrow, or a member of the firm of Rentfrow & Bro., and that his name was signed by said Stephen, without his knowledge, consent or authority.

At the trial, the following evidence was adduced:

*Robert Johnson*, testified: That in 1855, he sold a barrel of brandy to Stephen Rentfrow, and afterwards called on Bucket Rentfrow for the money, to pay Jeptha Landrum, for a still, which he, witness, had bought from him.   Landrum was owing Bucket Rentfrow, and said that it would answer him the same as money to settle it with Bucket, and in that way the debt was settled by Bucket Rentfrow with witness for the brandy.

*William Johnson*, testified: That in the spring of 1855, he bought of Stephen Rentfrow, out of the grocery, a barrel of mackerel; that shortly afterwards, he saw Bucket Rentfrow in Fayetteville, who was owing witness for work done for him, and asked him for the money, when Bucket asked witness if he was not owing in the grocery; witness said he

was; Bucket and witness then went to the grocery, and Bucket went behind the counter and settled the account. Stephen Rentfrow was present at the time, and remarked to witness that the account was settled.

*H. F. Underwood,* testified: That he had seen boxes and barrels of goods and groceries received, marked " Rentfrow & Brother;" had seen them in 1855, 1856, and 1857; had seen some marked to Stephen Rentfrow; that the first and last received were marked Rentfrow & Brother; had frequetly seen Bucket Rentfrow about the grocery when these goods were received, marked Rentfrow & Brother. Stephen Rentfrow generally attended to the business; once knew him to offer to sell out the grocery; was about to sell it to witness and George Ware; the sale was to be kept secret. Thinks they commenced business as far back as 1855, probably 1854.

*W. W. Bosworth,* testified: That he saw goods received at the grocery, marked Rentfrow & Brother, in 1855, 1856, and 1857; had also, during the time, seen some marked Stephen Rentfrow; those marked to Stephen, were bought in the spring of 1856; that he went with Stephen Rentfrow to Augusta, in April or May, 1856, and Stephen went to a different house from the one they formerly traded with, to buy groceries, and witness supposing that he and Bucket were in partnership, told the proprietors of that house that the debt was good. That he and Rentfrow being the only persons at that time, who kept retail groceries in Fayetteville, agreed to raise liquor to ten cents a drink, which they did upon their return. Afterwards, Bucket Rentfrow called on witness and asked him what he thought of the propriety of raising the price of liquor, saying at the time, that his reason for asking was that he was interested in the business. Had an account with Rentfrow's grocery and settled it with Stephen, but don't remember whether the receipt was signed "Rentfrow & Brother," or "Stephen Rentfrow." Stephen generally attended to the business.

*Johnson Whatley,* testified: That he had a conversation

with Bucket Rentfrow in 1855 or 1856, and asked him how he and Stephen were getting along; he replied, that Stephen was selling a good deal, but he did not get much profits; witness remarked to him, that perhaps he was getting a good deal out of the grocery himself. Bucket did not deny being a partner; thinks they commenced business in 1854; had seen barrels come marked to Rentfrow & Brother. Bucket Rentfrow was a farmer, and Stephen attended to the business, settled accounts, &c.

*L. F. Blalack*, testified: That he had seen goods received at the grocery, marked Rentfrow & Bro. They commenced business in 1854; he was in market with Stephen Rentfrow, when he bought perhaps his first stock. Had seen Bucket frequently in Fayetteville, at the grocery.

*J. L. Blalack*, testified: That after the stock of groceries were levied on, in 1857, Bucket Rentfrow applied to him, to know if he could claim them. Witness informed him that he could not, as he had stated to witness, that he had only agreed to let Stephen have the use of his name to get the first stock, and that he was to have one-half the profits realized. Bucket said he had not been interested since that time, which was in 1854. Witness advised him that he could not claim the goods; did not think that constituted him a partner; had a small account at the grocery and settled it with Stephen; don't remember whether he took a receipt or not. The conversation above referred to with Bucket Rentfrow, was after the 3d March, 1857.

*M. M. Tidwell*, testified in substance: That in the latter part of the year, 1855, Bucket Rentfrow called on witness to know if he had sold a certain house and lot in Fayetteville, to Stephen Rentfrow. Witness informed him that he had agreed to do so; Bucket said he did not want witness to sell it to him if he could avoid it; that Stephen did not need so large and costly a house, and had nothing to pay for it, except what he got out of the grocery, and that it would all be coming out of him, Bucket; that he had gone into the busi-

ness with Stephen to give him a start again, and that it looked like the way, he, Stephen was doing, would ruin him; that there were several debts against them which he would have to pay; that he understood Stephen was gambling, and that he had told him of debts which he had paid, which he, Bucket, afterwards found out had not been paid; that Stephen and his wife, or intended wife, were dressing fine, and living well, and all was coming out of him. Witness had a small account with Stephen Rentfrow, and settled it with him; had known him to sue on accounts in his own name.

*W. W. Matthews*, testified: That in 1857, he was Sheriff, and in April or May, of that year, levied on the stock of groceries, after which Bucket Rentfrow asked him if he did not think he was doing wrong to have his interest locked up.

The notes sued on were dated as follows: One 6th August, 1855; one 30th December, 1855; and one 6th March, 1856. All signed "Rentfrow & Bro. Here the testimony on the part of the plaintiffs closed.

Defendant offered no evidence.

The Court charged the jury, that if Bucket Rentfrow held himself out to the world as a partner, and permitted Stephen to buy goods in the name of the firm, or to use the firm name to procure credit, then he was liable to those who gave the credit, even if no agreement or contract of partnership was proved, and even if he had no beneficial interest in the concern.

The jury found for the plaintiffs against Stephen Rentfrow only, the sum of $522 25, and plaintiffs moved for a new trial on the following grounds:

1st. Because the verdict is contrary to law and evidence.

2d. Because the verdict is not only against law and evidence, but decidedly against the weight of evidence.

3d. Because the verdict is against the charge of the Court.

The Court refused the motion for a new trial and plaintiffs excepted.

TIDWELL & WOOTEN, for plaintiffs in error.

BLALACK; and HUIE & CONNOR, *contra.*

*By the Court.*—BENNING J. delivering the opinion.

We think, that there was evidence enough to support the verdict. And the case was submitted to the jury by the Court under a charge very favorable to the plaintiff in error. We cannot say, that the refusal of the new trial by the Court, was an improper exercise of discretion.

Judgment affirmed.