## PARTRIDGE *v.* HOLLINSHEAD *et al.*

1. A document purporting to be a brief of evidence, and approved as such by a trial judge, becomes a part of the record in the case to which it relates; and if the plaintiff excepts to the granting of a nonsuit he may, if he so elects, specify such a brief as a part of the record and have a transcript of the same sent up by the clerk of

the trial court, instead of incorporating such brief in the bill of exceptions.

:2. Persons who, as the "building committee" of a named "institute," make with another a contract for materials with which to build a schoolhouse, are, whether such "institute" has or has not a legal existence, personally liable for a breach of such contract, when it is shown that they intended to bind themselves individually, and not to be acting for any principal.

Argued June 13, — Decided July 26, 1898.

Action on contract. Before Judge Reese. Lincoln superior court. October term, 1897.

The plaintiff sued Wright, Harmon, Hollinshead, and Mc-Brayer, for $600 on account of an alleged breach of contract to take and pay for a lot of lumber. At the trial the court granted a nonsuit, and plaintiff excepted. He introduced in evidence the contract signed by himself and by Hollinshead, Wright, and Harmon, described therein as the building committee of the Lincoln County Institute, dated September 3, 1894, and reciting as follows: In consideration of $600 to be paid him as hereinafter provided, he binds himself to deliver to said three other parties named as of the second part, or their legal representatives, 70,296 feet of lumber according to bills and specifications to be furnished by them to him, the delivery to be made at his mill about five miles from Lincolnton. He further contracts and binds himself to deliver at his mill all the framing and other lumber necessary to hull in the institute on or before October 15, 1894; the rest of the lumber contracted for to be ready for delivery on or before December 1, 1894. Should the amount necessary to complete the building exceed 70,296 feet, the parties of the second part agree to pay for the excess at certain given rates; and should the amount necessary to complete the building not exceed 70,296 feet, plaintiff agrees to deduct from the $600 to be paid him at the rates so mentioned. The parties of the second part agree to haul the lumber from plaintiff's mill as fast as practicable, without manifest inconvenience or undue expense, and contract to pay him for the framing and other lumber necessary to hull in the building by November 10, 1894. They further agree to pay the balance of the bill as soon as the balance of the lumber in the bill is delivered in the

schoolhouse yard, not earlier than December 10, 1894. Said lumber is not considered to be delivered until received by the parties of the second part at plaintiff's mill. From the testimony it appears that a meeting was held in Lincolnton in 1894, for the purpose of building the schoolhouse referred to. The defendants were present, and the appointment of the committee was suggested by Mr. McBrayer to the meeting, and he and the other three defendants were appointed as such. Plaintiff's wife testified that soon after this meeting was held defendant Wright gave to her a paper introduced in evidence, and told her to give it to plaintiff and tell him to "saw it at once," that it was the dormitory lumber. She gave the paper to plaintiff. He testified that defendant Hollinshead told him they would be responsible for the lumber, and further told him, "As soon as the deed comes back from Mr. Haygood's I will have the contract fixed and signed up." A few days afterwards he called plaintiff into his house, and said the deed had come back, and read the contract over to plaintiff, with the statement, "Well, we will sign it right here"; and they did so. He further said, "I will see that the others sign it," and said that McBrayer, Harmon, Wright, and himself were the committee. Plaintiff went to the mill, and a day or two afterwards Hollinshead said they had the contract signed up all right, and asked plaintiff if defendant Wright had not brought him the bill of lumber. The next week Wright brought the bill of lumber to plaintiff's wife. Plaintiff saw Hollinshead, and he asked him if he was sawing the lumber. Plaintiff replied that he was, and would try and have it ready at the time specified in the contract. He did have it ready, and when the time came for payment they could not pay it. He asked Hollinshead about the money, who said he was going to make up the money and pay plaintiff. He moved to another county, and said he would turn it over to the others. He said he was going to Washington to raise $200, and would come down to Lincolnton and raise the other money and pay it. Afterwards he said he did not get the money, but saw Harmon and others and they said they would raise the money. Plaintiff asked Harmon about it. He said he never saw them. He saw Hollinshead no more. He told Harmon several times

the lumber was ready and they ought to be hauling it. Harmon said plaintiff ought to have the money for it. The $350 to be paid on the contract in November was not paid. He went on sawing after that. He quit because they failed to pay, and he did not think it worth while to go on and saw if they did not pay. (Plaintiff also had a talk with McBrayer, who asked him about the lumber, and upon being told it was sawed he said, "They have promised to go to hauling, and I think they will go to hauling next week"; but this was ruled out on objection.) Plaintiff put in evidence the bill showing items of lumber that he sawed. By the 15th of October, 1894, he had most of the lumber that was named in the bill ready. He had ready the framing, weather-boarding, boxing, and all other lumber needed to hull in the institute. He had it all ready then and told them to go to hauling; that it was ready. He has not that lumber on hand now and nothing to do with it. He told them it was their lumber. He did not get the benefit of it. It did not go to pay his debts. It was levied on under an execution against him. He did not owe anything. It was settled by the parties. This was a note that was lost in Augusta. He had to pay it and has a receipt for it. Three years afterwards it was found in the National Bank. He was a party to it but had a receipt on the note; was not owing anything. They got a judgment against him, sued on the note. He does not know how much it was for. It was settled under that execution. He supposes the lumber was sold under that execution. In the talks he had with Hollinshead and Harmon, the former told him he would pay the whole bill rather than see it fall through. That was not coupled with the statement he would go to Washington and get $200 up there; that was afterwards that he went there. That was all he ever said to plaintiff about it. Plaintiff had moved his outfit and everything on this territory where he was to do the sawing. He lacked about 18,000 or 20,000 feet of sawing the whole bill. He would have sawed that in about four days at a cost of $3 a day. It is expensive to move his machinery, etc., and it takes nearly a week to fix up for sawing after getting moved. He was not present when the lumber was sold under execution, and knows nothing about it of his

own knowledge.    Strother asked him if it was his lumber, and he told him it was not.    It is not down there now; it was burned. The woods caught fire in the fall of 1896 and burned up the sawmill and all.    He does not know whether all the lumber was there then or not.    He knows it was burned up, because it is not there now.    The entry upon the bill of lumber in evidence descriptive of the quality of the same is in the handwriting of the defendant Wright, who is dead.

*Colley & Sims,* for plaintiff.    *M. P. Reese,* for defendants.

LITTLE, J.    1. On the call of this case, the defendant in error submitted a motion to dismiss the writ of error, on the ground, among others, that, notwithstanding the bill of exceptions was sued out to the grant of a nonsuit, the evidence was not brought up in the bill of exceptions, but was only set out in the transcript of the record; and contended that under the law, the evidence should have been embodied in the bill of exceptions, and that there was no authority for bringing it up otherwise in this class of cases.    While it is true that by the provisions of section 4253 of the Code of 1882, it was declared that "The brief of evidence on motion for new trial, filed and approved according to law, is hereby declared to be a part of the record of the case to which it applies, and need not, except by reference thereto, be embodied in the bill of exceptions," it was, prior to the passage of the act of 1889, which will be hereafter referred to, held by this court that, under the 10th rule of court, which provides: "A brief of the oral and a copy of the written testimony in the case shall be incorporated in the bill of exceptions, or be attached thereto as an exhibit, when presented to the judge for his certificate, in which latter case it shall be identified as true by the signature of the judge thereupon," in all cases where no motion for a new trial was made, the brief of evidence should be embodied in the bill of exceptions, or attached thereto and properly identified by the signature of the judge.    *Mann v. Archer,* 69 *Ga.* 767; *Hightower* v. *Flanders,* 69 *Ga.* 772; *McMillan* v. *Davis,* 71 *Ga.* 866; *Hodges & Van Duzer* v. *Roberts,* 79 *Ga.* 212.    However, under the provisions of the act of 1889, as codified in sections 5528 and 5529 of the Civil Code, the rule

above referred to has been modified. By paragraph 1 of section 5528 it is provided: "If the case is not one in which a judgment on a motion for new trial is to be reviewed, the plaintiff in error shall plainly and specifically set forth the errors alleged to have been committed, and shall incorporate in the bill of exceptions a brief of so much of the written and oral evidence as is material to a clear understanding of the errors complained of," etc.; while section 5529 provides: "If the plaintiff in error shall so elect, he may have such brief of so much of the evidence as is necessary to a clear understanding of the errors complained of, approved by the judge and made a part of the record and sent up by the clerk as a part thereof, rather than have the same incorporated in the bill of exceptions." So that, under the provisions of this act, it is optional with the plaintiff in error whether he will embody the evidence in the bill of exceptions, or attach the same thereto and have it properly identified, as required under the former practice; or whether he will have such brief approved by the judge, and made a part of the record and sent up by the clerk as such. In the present case the plaintiff in error pursued the latter method, and the motion to dismiss can not be sustained.

2. Contracts may be so framed as to leave it uncertain whether the agent meant to contract as agent or to make himself personally liable. In such a case, the intention and understanding of the parties, as shown by the evidence of the contract, must govern. If an agent engages expressly in his own name to pay a sum of money or perform other obligations, he is personally responsible on such engagement, although he describes himself as agent, and is duly authorized to enter into such an engagement for his principal. If he uses his own name and not the name of his principal, he is prima facie personally liable, and the fact that he uses the word "agent" after his name will not alter the case unless the wording of the contract shows that it was intended that the principal should be bound. Clark on Contracts, 739, and authorities cited. If it does not appear from the instrument that it is intended to be the act of the principal, the agent will be personally liable, and the addition to his name of his title of office, or his representative character,

will not shield him from liability.   1 Am. & Eng. Enc. L. 387;.
*Cleveland* v. *Stewart, 3 Kelly,* 283.

In the case of *Nall* v. *Farmers' Warehouse Co.,* 95 *Ga.* 770,.
it was held:   "Where certain persons, intending to act for and
on behalf of others, do in fact, in the execution of a written
agreement for the rent of a warehouse, contract, not only for
and on behalf of their several principals, but also each for and
on behalf of himself, they thus bind themselves personally to
the performance of the covenants therein stated; all of the par-
ties are principals," etc.   In the present case, it appears that
there was a written contract entered into between "G. W. Par-
tridge of the first part, and T. E. Hollinshead, N. E. Mc-
Brayer, T. P. Harmon, and B. S. Wright, building committee
of the Lincoln County Institute, of the second part."   It was
undertaken by this agreement that the plaintiff in error should
deliver to the parties of the second part, or their legal repre-
sentatives, a certain quantity of lumber at stated times and
places, within a given period, in payment for which it was.
stipulated: "Said parties of the second part agree to haul said
lumber from the mill . . and contract to pay said Partridge for
the framing, weather-boarding, and such lumber as is necessary
to hull in said building, by November 10th, 1894.   They fur-
ther agree to pay the balance of said bill as soon as balance of
lumber . . is delivered in schoolhouse yard . . Said lumber is not
considered to be delivered until received by said parties of sec-
ond part at said Partridge's mill."   This agreement was signed
by Partridge, Hollinshead, Wright, and Harmon, the three last
being designated as "building committee."   This was a direct
agreement on the part of these defendants to purchase said lum-
ber and to pay for the same, and, as we have seen, the addition
to their names of "building committee" does not relieve them
from personal liability.   It was the manifest intention, as gath-
ered from this contract, that these parties individually under-
took to pay for the lumber.

The court erred in granting the nonsuit, and the judgment
is                      *Reversed..   All the Justices concurring.*