759. MICHAEL BROTHERS COMPANY *v.* DAVIDSON &
COLEMAN.

1. "When parties hold themselves out to the public as doing a particular
   business in a firm name, the law will imply a partnership agreement as
   to third persons who contract with them in that firm name, whatever
   may be the real nature of their connection as between themselves."
2. Without a charter there is no corporation; and without organization
   under the charter, there can be no corporate act, no corporate property,
   no corporate liability.
3. The uncontroverted evidence proves partnership existence and partner-
   ship liability, and the verdict to the contrary is without legal support,
   and a new trial should have been granted.

Complaint, from city court of Dublin—Judge Burch. August
6, 1907.

Argued December 16, 1907.—Decided February 24, 1908.

*Saffold & Larsen,* for plaintiffs.

*S. W. Sturgis, James A. Thomas,* for defendants.

HILL, C. J. Michael Brothers Company brought suit on an open
account, in the city court of Dublin, against Davidson & Coleman,
a firm composed of A. W. Davidson and H. C. Coleman Jr. The
defendants filed an answer in which they set up, as a defense, that
there was never any such firm as Davidson & Coleman, composed
of A. W. Davidson and H. C. Coleman Jr., or either of them, and
that neither of them ever did business under such firm name; but
that A. W. Davidson and H. C. Coleman Jr. were stockholders of
a corporation under the laws of Georgia, and, as such, bought the
goods from the plaintiffs, and the credit was extended by the
plaintiffs to the corporation, and not to Davidson & Coleman as
a partnership. The jury found a verdict for the defendants; and
the plaintiffs made a motion for a new trial, based upon the general
grounds and several special grounds, which was overruled, and the
plaintiffs except.

The evidence for the plaintiffs is as follows: The plaintiffs,
through an agent, sold the bill of goods, the consideration of the
account sued, to the defendants at their place of business in Dub-
lin, on June 26, 1905. The goods were, in accordance with the
order of the purchasers, shipped to them immediately. The de-
fendants, at the date of the sale, were doing business under the
firm name of Davidson & Coleman. When the goods were sold,

the agent of the plaintiffs was introduced to H. C. Coleman at their place of business by A. W. Davidson, who stated that the firm was Davidson & Coleman, and that H. C. Coleman was a member of the firm. The goods were then sold to the firm, in the firm name of Davidson & Coleman, and credit was extended to the firm of Davidson & Coleman. Neither Davidson nor Coleman stated to the agent, at the date of the sale, that their business was incorporated, or that they expected to incorporate it; and the agent knew nothing of the existence or proposed creation of any corporation. Davidson testified, that in May, 1905, Coleman and himself went into business together; that he had a stock of goods worth four or five thousand dollars, and he sold a half interest therein to Coleman; that the goods represented by the account sued on were bought from the plaintiffs for the firm, by a clerk of the firm; that they had paid the plaintiffs for some of the goods, and that the account for the balance sued for was correct and unpaid. To meet this evidence, the defendants offered the following testimony: Both Davidson and Coleman testified that they never formed a partnership, but did business together, with the understanding that they would incorporate the business at the earliest possible moment; and they did so incorporate, by securing a charter on July 25, 1905, and organized under the corporate name of Davidson Coleman Mercantile Company. They did not have the charter when the goods sued for were bought, and it was not granted until some time thereafter. . Neither remembered whether their application for charter was pending when they bought the goods, or whether they at that time told the agent of the plaintiffs that they intended to apply for a charter and to carry on the business as a corporation. The clerk of the defendants, who bought the bill of goods for them, stated, that he thought he told the agent that the business was incorporated, and gave him the name of the corporation. At the time the goods were bought, the business had not been incorporated, and "if I told him that the business was then incorporated, I misrepresented the facts." The application for charter was first published May 30, 1905, but the charter was not granted until July 25, 1905. Davidson testified, that the business in which he and Coleman were interested began about May 6, 1905; that he and Coleman owned an equal interest in the goods, and shared equally in the profits and losses, and that

the expenses of running the business were to be paid from the business. At the time they went into business, "it was distinctly understood that the business would be incorporated, the purpose being to avoid personal liability. The corporation was changed to Davidson & Grinstead Mercantile Company, and broke."

There is no material conflict in the evidence; and under it a verdict should have been found in favor of the plaintiffs. It is clearly shown that at the time the goods were sold to the defendants they were holding themselves out to the public as doing business in the firm name of Davidson & Coleman; that they bought the goods in that name, and credit was extended to them as a firm. Under their own testimony the defendants were, in law, partners, however they may have regarded their relation. They owned all the assets, shared equally in losses and profits, and paid expenses out of the business. There was no charter granted at the date of the purchase, and none granted until a month afterwards. There is no evidence that the goods were sold or credit given to a proposed or intended corporation. A corporation is not a person, in law, until after the grant of its charter (*Bartram* v. *Collins Mfg. Co.,* 69 *Ga.* 751); and after a charter is granted, it has no authority to transact business until legal organization. Without charter and organization, "it could do no corporate act, could receive no corporate property, could incur no corporate liability, and against it no corporate judgment could be legally rendered." *Rau* v. *Union Paper Mill Co.,* 95 *Ga.* 212 (22 S. E. 146). The utmost that can be claimed for the defendants is that they had an understanding between themselves that, while they were in fact doing business as partners, they intended to incorporate the business, and that they did, subsequently to the purchase of the goods as partners, become a corporation. This understanding or intention was unknown to the plaintiffs, and could not bind them. Civil Code, §2650. "When parties hold themselves out to the public as doing a particular business in a firm name, the law will imply a partnership agreement as to third persons who contract with them in that firm name, whatever may be the real nature of their connection as between themselves." *Barnett* v. *Blackman,* 53 *Ga.* 98.

But even if the intention to incorporate had been known to the plaintiffs, it would not affect their rights against the partnership

and the members thereof, unless in fact credit was extended to the intended corporation; and there is no circumstance indicating that this was the case. The whole matter is in a nutshell. The defendants were doing business as partners when they bought the goods from the plaintiffs, and credit was extended to them as such. Subsequently they incorporated "for the purpose of avoiding personal liability." The weakness of their defense is that they did not become a corporation until after their liability as partners and individuals had become fixed. They can not shift this liability to the shoulders of an insolvent corporation subsequently created. Debt is a shirt of Nessus. When one gets into it, it is difficult to get it off. Courts will not help the debtor, unless they can do so without injustice to the creditor.

Some of the special exceptions are meritorious; but the general exception that this verdict is without evidence to support it is so full of merit that we content ourselves with reversing the judgment refusing a new trial on that ground. *Judgment reversed.*