887. MEINHARD, SCHAUL & COMPANY *v.* BEDINGFIELD
MERCANTILE COMPANY *et al.*

1. The verdict returned was the only verdict that could have been rendered, under the undisputed evidence. Regardless of the agreement between the defendants to consider their business as a corporation, the necessary

result of the association, so far as third persons were concerned, was to form a copartnership.

2. A corporation can not be created by a mere agreement between individuals; the agreement and association must be authorized and sanctioned by law. Corporations are creatures of the law, and can only come into existence in the manner prescribed. by law. No agreements of the incorporators are of any effect in creating a corporation or in attaching liability to a corporation, until a charter has been granted by the proper authority, and accepted, and the organization of the corporation perfected.

3. By the very nature of the business they were carrying on, the defendants were in partnership up to the time that the charter was granted and organization perfected thereunder. Individual liability as to third parties can not be avoided by resolutions or agreements to create a corporation, when no charter has been granted. The promoters of a corporation are each individually liable for debts created in behalf of a proposed corporation, unless these debts are paid by the corporation after its organization.

4. In every mercantile partnership each partner has the right to buy and sell goods used by the partnership in the ordinary course of its business; and even when one is not in fact a partner, he may be held out as such, either by a course of dealing or by ratification of acts performed by him as an ostensible partner.

5, 6. The error·in not excluding the testimony objected to, like the evidence itself, was immaterial.

7. Where there is no conflict upon those issues which must absolutely control the result, and where no error of law, the correction of which might authorize a different finding upon the same testimony, has been committed, it is error to set aside a verdict rendered in accordance with the law and the evidence.

Complaint, from city court of Dublin—Judge Burch. October 28, 1907.

Argued February 5,—Decided April 9, 1908.

*Ira S. Chappell, Mayson & Hill,* for plaintiffs.

*W. C. Davis, S. W. Sturgis,* for defendant.

RUSSELL, J. Meinhard, Schaul & Company (the plaintiffs in error) brought a suit against the defendants in error, on an account for goods furnished. The action was brought against the defendants as a partnership, composed of H. R. Bedingfield, A. B. Daniel, and M. L. Clance. The jury rendered a verdict in favor of the plaintiffs; and, upon motion for new trial, the judge set aside the verdict and granted a new trial.

1. The discretion of the trial judge, in the first grant of a new trial will not be interfered with, so far as the evidence is concerned, unless the verdict rendered was demanded by the evidence,

or unless, in a case where there was conflict in the evidence, material errors of law upon the part of the judge may have induced or contributed to the jury's finding. In the present instance we think that the court erred in granting a new trial; for the reason that the verdict rendered was the only verdict that could have been legally returned, under the undisputed evidence and the law applicable thereto. The plaintiffs brought their suit against the defendants as a copartnership, and the defendants denied that there was a partnership. We come first, then, to consider whether or not there was a partnership in fact, or liability on the part of the defendants as partners because they held themselves out as such and thereby created a partnership so far as the rights of these plaintiffs are concerned. Certain facts in the case are undisputed, —that the plaintiffs were informed by the defendant Clance, before taking the order for the goods, that he and H. R. Bedingfield and A. B. Daniel were copartners, that Bedingfield and Daniel were men of means, while he had no property, and that it was intended to incorporate the business in 1906; that the goods, for the price of which the suit was brought, were ordered November 23, 1905, and shipped November 25, 1905, and were received by the "Bedingfield Mercantile Company," and converted to their use as a part of their stock of goods, and never paid for; that no charter was ever granted authorizing the incorporation of the Bedingfield Mercantile Company, until February, 1906, three months after the defendants received the goods. There was no evidence as to when the charter granted them in February, 1906, was accepted by the corporation, other than that it was as soon as they received the charter. It appeared, from the evidence, that the business began in September, 1905, under an agreement between Bedingfield, Daniel, and Clance, that the business was to be run as a corporation, and not as a partnership; and that as soon as they agreed to go in together they formed an association and elected officers, agreeing to do business as a corporation until they could get their charter.

2. It is certain, from the foregoing statement of facts, that the plaintiffs did not deal with a corporation; that there was no corporation at the time the goods were bought and shipped, and there can be no corporate liability. So that if the defendants are not liable as a copartnership, there is no liability. It is immate-

rial what agreement these defendants may have made among themselves, by which they determined they would consider themselves as a corporation and would be so considered. Corporations are creatures of the law, and can only come into existence in the manner prescribed by law. Unless the charter was granted, and thereafter accepted by the incorporators, and an organization perfected in compliance with its provisions, all of the agreements of the incorporators were nugatory and absolutely void and of no effect in creating a corporation. This being the state of the law, it was immaterial, for the purposes of the case, whether the plaintiffs knew, when they furnished the goods, that the defendants intended to form a corporation, or not. They had not done so, and could not, without a charter; and in dealing with each other, both plaintiffs and defendants were bound by the law, and presumptively acted understandingly with reference to the law. Both plaintiffs and defendants knew, when the goods were received and placed upon the shelves of the defendants' store, that without a charter, and proper organization under the charter, there was no corporation, and there could be no corporate acts, no corporate liability, and no corporate property. *Michael* v. *Davidson,* 3 *Ga. App.* 752 (60 S. E. 362) ; *Bartram* v. *Collins,* 69 *Ga.* 751; *Rau* v. *Union Paper Mill Co.,* 95 *Ga.* 212 (22 S. E. 146).

3. We think the fact that there was a partnership is proved by the testimony of H. R. Bedingfield himself, in that in his testimony there is nothing to differentiate in any respect the business to be carried on by himself, Daniel, and Clance, or their relationship to the public, from any general partnership, except their own resolution that they would consider themselves, and would be considered, as a corporation. It matters not what might be their resolution, the true test of their relationship, as to the outside world, would depend upon whether they were in fact a corporation, and were thereby relieved from individual liability, or whether, by reason of the very nature of the business they were carrying on, they were jointly and severally liable for all of the indebtedness created up to the time that the charter was granted and an organization perfected thereunder. Much stress is laid on the objection to the testimony adduced by the witnesses Vinson and Schaul; and some portions of their testimony is inadmissible. But so far as the point at issue is concerned, the testimony of Bedingfield himself

is the same, as to individual liability, as the statements alleged to have been made by Clance to Vinson, and by him communicated to Schaul, as a basis of credit. It may be that the statement as to the financial responsibility of Bedingfield and Daniel influenced the plaintiffs in extending credit, but if such a statement had never been made and the goods had been sold within it, Daniel and Bedingfield, under the testimony of Bedingfield himself, would be responsible for the goods; because they were engaged in a joint business with Clance, and ratified his purchase, by receiving the goods and getting the benefit of them. It would be unconscionable to allow several persons, who, under the law, could share in the profits if there were profits, to say that by private resolution they could take the goods of another, upon which those profits depended, and escape all liability for payment, by their private agreement to be a corporation. To my mind such a proceeding as this would be monstrous. Let it be conceded that the defendants knew nothing of Clance's statement to the salesman of the plaintiffs, and let it be conceded that they had an agreement by which the Bedingfield Mercantile Company, so called, was to be a corporation full grown three months before the law said it had a right to be born, yet, under the undisputed evidence, the relationship was nothing more than a partnership, in which Bedingfield and Daniel were, so far as the plaintiffs are concerned, secret partners. And the liability of secret partners, when they are discovered, is no less than if they had been all along ostensible partners. As a general rule, promoters of a corporation are each individually liable for debts created in behalf of the proposed corporation, unless these debts are paid by the corporation after its organization.

4. The evidence, however, does not show that the defendants were secret partners, so far as these plaintiffs were concerned. The legal effect of Mr. Bedingfield's testimony, waiving the agreement inter sese, is that Clance was a partner up to the time that the charter was granted and the organization of the corporation perfected, and this was several months after the defendants got the plaintiffs' goods. Clance, being a partner, had a right to buy the goods, unless the other partners had informed the public that he had no authority to buy goods. And as he was a partner, it is doubtful if a sale to him would not have been good during the existence of the partnership, even in spite of such a notice.

In a mercantile partnership every partner has the right to buy property for the partnership and to sell partnership property. But, even if there was in fact no partnership, these defendants, by their course of dealings, held Clance out to the world as a partner, by allowing him to buy goods, and knowingly accepting the goods that he bought; and even if a partnership never existed as between these defendants, they can not, after having received all of the fruits of Clance's purchase, be heard to deny that a partnership did in fact exist. Mr. Bedingfield does not deny that he knew when these goods came into the store. On the contrary, he testifies that he did know when they were received. Can the jury infer otherwise than that he would naturally inquire (as he testifies that he was to buy the dry goods) who bought these goods, and, as the goods were not returned to the plaintiffs, that he was satisfied with and ratified the purchase in behalf of the entire firm? There can be no other inference than that if Bedingfield was to purchase the goods for the "association," the purchase of the goods in question was ratified.

"Diligence in ascertaining and contradicting the report is not required of one who is held out as a member of a partnership without his knowledge" (Campbell v. Hastings, 29 Ark. 512); but where a person, with his knowledge and consent, has been held out to third parties as a partner, liability as a partner is fastened on him; and a secret and unauthorized holding out will have this effect as the result of a subsequent ratification. See Butler v. Hinkley, 7 Colo. 523 (30 Pac. 250). In *Slade* v. *Paschal,* 67 *Ga.* 541, it was held that if A told B that he was a partner of C, and B informed C of the statement, to which C made no reply, C would be liable as a partner. The conduct of the parties in this case in carrying on business jointly, with no other reservation or better protection than the agreement that they would be considered a corporation and do business as such, if it did not amount to an actual holding out of themselves as partners, at least can not affect the rights of those who observed their course of business and dealt with them accordingly. "Persons not partners inter se may render themselves liable as such to third persons by holding themselves out to be partners. And on the principle of estoppel this may be by word spoken or written, or by conduct leading to the belief that they are partners." Cirkel v.

Croswell, 36 Minn. 323 (31 N..W. 513). It is not true in this case, as in *Barnett Line of Steamers v. Blackmar*, 53 *Ga.* 98, that the name under which the defendants did business imported a partnership; but not only the absence of any corporate existence, but also the nature of the relation actually existing between them, created a partnership; and certainly, as to the particular goods involved in this case, the partnership was ratified by the defendants. What Clance told the salesman of the plaintiffs did not differ in its material details from the truth as testified by the defendants on trial. Both Daniel and Bedingfield were interested in the business, and Clance was interested with them, and the legal effect of their association was to render each liable for all debts created prior to their proposed incorporation. There can be no other inference than that Daniel and Bedingfield knew the legal effect of their association. They thereby permitted themselves to be held out as partners. "A person who permits himself to be held out as a partner is liable as such to one from whom credit is secured on the strength of the supposed relation." Brugman *v.* McGuire, 32 Ark. 733; Fisher *v.* Bowles, 20 Ill. 396; Walrath *v.* Viley, 65 Ky. 478; Chidsey *v.* Porter, 21 Pa. St. 390. "Parties to an agreement reciting a state of facts establishing a partnership relation are, as to third persons, dealing on the faith of such recital, estopped to deny the state of facts assumed by such an agreement." Delaney *v.* Dutcher, 23 Minn. 373. See.also Wiley *v.* Deering, 34 Ill. App. 169; Thurber *v.* Carter, 30 Tenn. 271.

5. The objections urged in the first and second grounds of the amended motion, to the admission of the evidence of Vinson, rest upon two propositions: (1) that the statement made by Clance to Vinson was not in the presence of the other defendants, and (2) that he had not been served, and for that reason was not a party to the suit. As we view it, if the testimony of Mr. Vinson be excluded from the evidence, a verdict in behalf of the plaintiffs would still be demanded. As all of the evidence clearly shows that the effect of the agreement admitted by the defendants was to create a partnership, the error in not excluding that portion of the evidence of Vinson which was objected to is harmless.

6. The various objections made to. the testimony of M. H. Schaul should have been sustained, as the testimony objected to was hearsay and inadmissible. But the error in this respect is

harmless, especially as most of the answer objected to referred to the financial condition of some of the parties; and their respective financial worth was immaterial, after the partnership was shown. For the same reason it is unnecessary to pass upon the objections urged to the letters offered in evidence.

7. If there had been a conflict in the evidence as to the material matter in the case, to wit, whether a partnership really existed between Clance and the other defendants, we should not interfere with the discretion of the trial judge in granting a new trial. It is the right of the trial judge, upon review, and his duty, to exercise a discretion which operates solely upon the credibility of the witnesses. But where there is no conflict upon those issues which must absolutely control the result, and where no error of law, the correction of which might authorize a different finding upon the same testimony, has been committed, it is error to set aside a verdict rendered in accordance with the law and the evidence.                                      *Judgment reversed.*