## 3880.   PYLE *v.* BOOZ.

One who buys personalty from an· agent of the owner, with knowledge of the agency, can not, upon failure of the owner's title, maintain against the agent an action for damages for breach of warranty. Where, in the trial of such a case, the evidence is in conflict as to the purchaser's knowledge of the ownership and agency, it is error to direct a verdict in his favor.

DECIDED MARCH 6, 1912.

Complaint; from city court of Floyd county—Judge Reece. October 30, 1911.

*M. B. Eubanks,* for plaintiff in error.

*Dean & Dean, J. M. Hunt,* contra.

POTTLE, J. This case is the sequel to that of *Booz v. Neal,* 6 *Ga. App.* 279 (64 S. E. 1104). After the affirmance of the judgment in that case, as a result of which Booz was compelled to pay off the fi. fa., he sued Pyle, the seller, for breach of warranty, and the trial judge directed a verdict in the plaintiff's favor.· Pyle's defense was that he sold Booz the cotton as agent for one Payne, who was present at the sale, and that Booz knew the cotton was Payne's, and therefore took the chances, so far as he (Pyle) was concerned, of a failure of Payne's title. The evidence showed that in 1906 Payne was a tenant on a farm bought from Coker by Pyle, who gave his joint note with Payne at a bank, in order to raise money necessary to make the crop. In the fall Payne had five bales of the cotton ginned in Pyle's name and delivered to Pyle at the warehouse, the receipts being issued in Pyle's name. Pyle went with the receipts to the bank, took up the note which he and Payne had given, and gave his individual note in renewal, hypothecating the warehouse receipts as collateral security. Subsequently Coker levied a distress warrant on the cotton. Pending this levy negotiations were opened for the purchase by Booz from Pyle of a lot of cotton. Coker, having been satisfied, dismissed

his levy, and Pyle sold to Booz nine bales of cotton, including the five bales delivered to him by Payne, paid the note at the bank with a portion of the money, and delivered to Booz the five warehouse receipts. Subsequently Neal levied on the five bales in the possession of Booz, and, when the verdict finding the property subject was approved by this court, Booz paid Neal's claim. Booz sued Pyle for the amount paid by him on the Neal fi. fa., but the judge directed a verdict for the amount paid Pyle for the cotton, a somewhat smaller sum than that paid Neal. Booz testified, that he dealt with Pyle as the sole owner of the cotton, and did not know Payne in the transaction at all, that Pyle claimed he owned it all the time, and that after Coker's claim for rent was settled there was, so far as Booz knew, no other claim against the cotton. Pyle and Payne testified that the cotton was Payne's; and the point in the case is whether there was any evidence from which the jury could find that Booz knew this when he bought the cotton. It is insisted for the defendant in error that Pyle, having taken the warehouse receipts in his name, is estopped to deny his title. If he sold the cotton as his own, he would, of course, be estopped, not so much because of the receipts, but upon the general principle that one who sells property to another and takes the other's money can not be heard, as against the purchaser, to deny his title. But if Pyle sold the cotton as agent of Payne, and Booz knew this, the doctrine of estoppel has no application. We are reluctant to disturb the verdict directed, because it seems to be a manifestly just disposition of the case, but if there is any evidence to support a different result, the trial judge had no power to deny the defendant a jury trial, nor have we authority to uphold him in so doing. While, in the trial of the claim case, Pyle swore pointedly that the cotton was his when he sold it to Booz, having been delivered to him by Payne in settlement of a supply bill, in the present trial both he and Payne testified that the cotton was Payne's and that Booz knew it. We quote from Pyle's testimony: "I had not bought that cotton from Payne, nor never in my life told anybody I bought it from Mr. Payne, only stated it was mine by rights of mortgage and nothing else. I said the cotton was mine by rights under the mortgage and nothing else, never had any more claim on it. . . I did sell that cotton in that transaction for Payne, because Payne told me to do so, then and there,

and Payne was present at the time.  Booz knew who that cotton belonged to at that time just as well as I did, because he would not buy it until the levy was dismissed, and I know I would not have gone on my own bond for the cotton."  Payne swore: "I paid the interest and put the cotton in there in Mr. Pyle's name, so that he could put up his own note as collateral security to extend my note until he got ready to sell the cotton.  Did not sell that cotton to him, only just that agreement.  I turned it over to Pyle to sell and apply to these notes  .  .  Booz knew, at the time he bought this five bales of cotton that it was my cotton he was buying, and that the proceeds were being applied to my debts; he knew it and he went to Coker to find out whether Coker had anything else against the cotton, before he bought it, and came back and said that Coker had a claim for rent for the year before, and he made it up in his own mind that Coker could not collect that and he bought it anyhow."  He further testified: "I never told Booz I owned it, but he knew it.  He knew it was my cotton, I told him so, and he objected to buying it, because it was levied on, and he afterwards went and got that rent affair out of the way."  We think this testimony made a jury question.  If Pyle was acting as Payne's agent in making the sale and Booz knew it, Booz can not look to the agent for a breach of the warranty of title.  There is nothing in the evidence to demand, even if it authorizes, a finding that Pyle knowingly concealed from Booz the existence of the judgment in favor of Neal which afterwards subjected the cotton, although such concealment would not support the action as brought.  There is nothing in the point that because Booz sued for the amount paid by him to Neal, he can not recover his true measure of damages, to wit, the sum paid Pyle for the cotton.  We feel constrained to send the case back for a trial before a jury.

*Judgment reversed.*