31739.   CLARKE *v.* WOODWARD.

DECIDED NOVEMBER 6, 1947.   REHEARING DENIED NOVEMBER 26, 1947.

182

*Victor K. Meador, Stonewall H. Dyer,* for plaintiff in error.
*Jones & Jones, T. B. Rigdon,* contra.

SUTTON, C. J. (After stating the foregoing facts.) ■ In the general grounds and in special ground 5 of the motion for a new trial, the defendant contends that the verdict is contrary to the evidence and without evidence to support it. The evidence, while conflicting, authorized the jury to find that the defendant was interested in obtaining a coffee shop or a hotel dining room for E. L. Moseley; that he advanced money to Moseley to operate dining rooms in the Albemarle Hotel, in Toccoa, Georgia, and in the Hotel Hern, in Franklin, North Carolina; that these dining rooms were operated under the name of Albemarle Hotel Dining Room; that the defendant did not enter into any written agreement with Moseley, nor did he receive any notes or other evidence of indebtedness when he advanced money to Moseley; that he was to receive for the use of his money a part of the profits of the business, which part was to constitute a larger return on the money than lawful interest but that no definite sum had been agreed upon as this was to depend on the amount of profit made by the business; that the defendant was to receive 10 or 15% interest or return on the money furnished Moseley; that about 10 days before the check in question was given, the defendant went to Franklin, North Carolina, where he was introduced by Moseley to the plaintiff as a partner in the busi-

ness and that the defendant did not deny being a partner with Moseley and shook hands with the plaintiff; that Moseley, in the presence of the defendant, told the plaintiff that the defendant "was worth quite a bit of money and he was not worried about any backing"; that Moseley presented a check for $1500 to the Bank of Franklin, signed Albemarle Hotel Dining Room, by E. L. Moseley, and drawn on the Bank of Toccoa, and the bank required him to get some one with a credit standing to endorse it; that the plaintiff endorsed the check as an accommodation endorser after he had been shown a deposit book of the Albemarle Hotel Dining Room, showing deposits of $2000; that when plaintiff endorsed the check he "relied on the statement that Mr. Clark was his [Moseley's] partner or [plaintiff] would never have endorsed the check"; that Moseley told plaintiff at the time he endorsed the check that he was using the money for the Albemarle Hotel Dining Room, and, so far as plaintiff knew, the money was used for that purpose. It appeared that the check was returned by the Bank of Toccoa on account of insufficient funds, and that it was properly protested and notice of protest duly given to all endorsers on the check; that the plaintiff had reimbursed the Bank of Franklin for said check, but that he had not himself been reimbursed for the same.

The plaintiff testified that Moseley came to his place of business several times; that Moseley told him that the defendant was his partner, backing him up financially, in the Albemarle Hotel Dining Room, and that the defendant was worth quite a bit of money and well represented in Dun and Bradstreet and had a business in Atlanta and would back him up in anything he wanted to do; that Moseley told him that the defendant was his partner in the business, and later brought him to the plaintiff's drug store and introduced him as his partner; that Moseley later brought him a deposit book, showing deposits of over $2000 in the Bank of Toccoa to the account of the Albemarle Hotel Dining Room and told him he had some checks outstanding at the time. While the plaintiff testified on cross examination that the reason he endorsed the check was the fact that Moseley showed him the passbook that he had a deposit of $2000 in the Bank of Toccoa and was in business there and was an outstanding citizen, on direct examination, he testified that

when he endorsed the check for $1500 for Mr. Moseley, he relied on the statement that the defendant was Moseley's partner, or he would never have endorsed the check. The plaintiff then testified: "You ask if in my statement a minute ago that I relied on the bank book as the inducing cause of my endorsing the check, if that was the only reason I signed the check or whether it was because of the statement in regard to Mr. Clarke. Well, more or less on Clarke's account because he was the one he said had the money. I would not have endorsed the check for $1500 if it had not been represented to me that Clarke, a man of financial standing, was a partner in the business." Under this testimony, the jury was authorized to find that the plaintiff was induced to endorse the check both by the exhibition to him of the bank book showing deposits of $2000 in the Bank of Toccoa to the account of the Albemarle Hotel Dining Room, and by reason of the fact that he believed that the defendant was a partner in the business and a man of financial standing.

"A partnership may be created either by written or parol contract, or it may arise from joint ownership, use, and enjoyment of the profits of undivided property, real or personal." Code, § 75-101. "A joint interest in the partnership property, or joint interest in the profits and losses of the business, shall constitute a partnership as to third persons. A common interest in profits alone shall not." § 75-102. "An ostensible partner is one whose name appears to the world as such, and he shall be bound, though he has no interest in the firm." § 75-104. The defendant denied that he was a partner in the business with Moseley, and whether or not such a partnership, actual or ostensible, existed at the time of the issuance of the check in question is the controlling issue of the case. It was held in *Swygert Brothers* v. *Bank of Haralson*, 13 *Ga. App.* 640, 642, 644 (79 S. E. 759) : "It is well settled by authority that a partnership may be proved by evidence that each of the alleged partners admitted its existence and his membership" and "that only slight evidence would be necessary to bind the parties as partners in their relations to creditors, although it might require stronger proof to establish the partnership inter sese." Also, see *Scranton, Kolb & Co.* v. *Rentfrow*, 29 *Ga.* 341; *Chaffee St. Amand & Croft* v. *Rentfroe*, 32 *Ga.* 477. While the defendant in the pres-

ent case did not state that he was a partner with Moseley, when Moseley introduced him to the plaintiff as his partner and stated that the defendant was worth quite a bit of money and that he was not worried about any backing, the defendant did not deny the partnership or that he was backing Moseley as a partner in the business, but acquiesced in the statements. "Acquiescence or silence, when the circumstances require an answer or denial or other conduct, may amount to an admission." Code, § 38-409. The jury was authorized to find that Moseley told the plaintiff in the defendant's presence that the defendant was a partner in the business with him and that the defendant did not deny the statement but gave his implied approval to it by remaining silent and shaking hands with the plaintiff, and that the plaintiff, when he endorsed the check, did so because he relied on the representations made by Moseley and acquiesced in by the defendant, that the defendant was a partner in the business. It was held in *Slade* v. *Paschal*, 67 *Ga.* 541, 544: "It cannot be doubted, if Paschal represented to Slade that Neal was his partner, and When Slade told Neal of this he made no denial of the fact, and money was advanced by Slade upon the faith of this representation, that he (Neal) would be liable." In this connection, also see *Meinhard* v. *Bedingfield*, 4 *Ga. App.* 176, 181 (61 S. E. 34); *Roberts* v. *Curry Grocery Co.*, 18 *Ga. App.* 53 (88 S. E. 796); *Shapleigh Hardware Co.* v. *McCoy*, 23 *Ga. App.* 265 (98 S. E. 102); *Brady* v. *Phillips Mule Co.*, 27 *Ga. App.* 444 (2) (108 S. E. 809); *Dixon* v. *Sol Loeb Co.*, 31 *Ga. App.* 165 (8) (120 S. E. 31); *Davis* v. *Citizens-Floyd Bank & Trust Co.*, 37 *Ga. App.* 275 (139 S. E. 826); *American Cotton College* v. *Atlanta Newspaper Union*, 138 *Ga.* 147 (4) (74 S. E. 1084). Irrespective of whether or not the evidence demanded or authorized a finding that the defendant was an actual partner in the business, it amply authorized a finding that he held himself out to the plaintiff as an ostensible partner in the business and that the plaintiff endorsed the check in question because he believed that the defendant was in fact a partner in the business, and that the defendant was liable to the plaintiff by reason of his ostensible partnership in said business. The verdict is supported by the evidence, and the judge did not err in overruling the general grounds and special ground 5 of the motion for a new trial.

■ Complaint was made in special ground 4 of the motion that the court erred in admitting certain testimony of the plaintiff. It appeared that when the testimony was offered counsel for the plaintiff stated that he would "connect it up by showing a partnership arrangement which would render it admissible" and upon the defendant objecting to the admission of the testimony the court ruled, "I will reserve the ruling on it pending its being connected up." There was no further motion made to exclude the testimony and no ruling was made by the trial judge with respect to admitting the evidence. "When the court provisionally admits evidence on the statement of counsel that he will subsequently supply a defect in the preliminary proof necessary to its admission, it is not for the judge of his own motion to determine whether such defect has been supplied and rule out the evidence, without a request to that effect from the other party." *Hix* v. *Gulley,* 124 *Ga.* 547 (1) (52 S. E. 890). It was held in *American Agricultural Chemical Co.* v. *Rhodes,* 139 *Ga.* 495 (8) (77 S. E. 582): "Where the court refused, at the time an objection to testimony was interposed, to make a ruling thereon, but reserved his decision until the witness had testified further, and thereafter there was no further objection or motion to rule out the evidence, and no ruling was made thereon, a complaint that the judge failed to sustain the objection to the testimony furnishes no ground for a motion for a new trial." Also, see *Becker* v. *Donalson,* 133 *Ga.* 864 (67 S. E. 92); *Bacon* v. *Bacon,* 161 *Ga.* 978 (133 S. E. 512); *Brooks* v. *Ritch,* 31 *Ga. App.* 539 (121 S. E. 136). The judge did not err in overruling special ground 4 of the motion for a new trial.

■ The defendant contends in special ground 6 of the motion for a new trial that the verdict is contrary to the evidence for the reason that the lease executed by Mr. & Mrs. F. D. McConnell to "the dining room and kitchen space situated and known as the Albemarle Hotel Dining Room and kitchen, located in the City of Toccoa, Georgia," was made to Mr. & Mrs. E. L. Moseley and that this lease, which was admitted in evidence, demanded a finding that the defendant, who was not a party to it, was not a partner in the business operated by Moseley. It does not appear that the plaintiff saw or had knowledge of the terms of this lease, and the evidence authorized a finding that the defendant

was liable to the plaintiff on said check as an ostensible partner in said business. The judge did not err in overruling this ground of the motion for a new trial.

■ The verdict is supported by the evidence, no error of law appears, and the judge did not err in overruling the motion for a new trial.

Pursuant to the act of the General Assembly, approved March 8, 1945 (Ga. L. 1945, page 232, Code Ann. § 24-3501), requiring that the full court consider any case in which one of the judges of a division may dissent, this case was considered and decided by the court as a whole.

*Judgment affirmed. Sutton, C. J., MacIntyre, P. J., Gardner and Parker, JJ., concur. Townsend, J., concurs specially. Felton, J., dissents.*

TOWNSEND, J. concurring specially. While the rule that the testimony of a party who offers himself as a witness in his own behalf is construed most strongly against him when it is self-contradictory, vague or equivocal, and unless there be other evidence tending to establish his right to recover, same will be defeated, if that version of his testimony the most unfavorable to him demands a verdict against him, is recognized, it however, in my opinion is not applicable to this case. It is true that the plaintiff when asked if the reason he endorsed the check was the fact that he was shown the passbook showing a deposit of $2000 in the bank at Toccoa, and that he had met Moseley, and that Moseley was in business there and was an outstanding citizen, answered "I will say yes," yet he did not say that was his sole reason for endorsing the check and, by way of explanation of this answer he immediately thereafter testified as follows: "You ask if in my statement a minute ago that I relied on the bank book as the inducing cause of my endorsing the check, if that was the only reason I signed the check or whether it was because of the statement in regard to Mr. Clarke. Well, more or less on Clarke's account because he was the one he said had the money. I would not have endorsed the check for $1500 if it had not been represented to me that Clarke, a man of financial standing, was a partner in the business." While he testified in his explanation as above-quoted that his other reason for endorsing the check was "more or less on Clarke's account," in my

opinion this would not work a defeat of his recovery. I think he would be entitled to recover under his testimony if he was motivated to any substantial degree by the representation made to him of the partnership and by reason of Clarke's apparent connection with it. Construing his testimony with reference to the bank book and his explanation of it with regard to Clarke's apparent connection with the business together, I do not think his testimony is such as demands a verdict against him.

FELTON, J., dissenting. I dissent from the judgment for two reasons:

■ The only way in which the maker of the check in this case was bound to an accommodation indorser was by reason of the fact that the offense of issuing a bad check or cheating and swindling was committed. I do not think that the doctrine of estoppel could be stretched so far as to make the defendant liable in this case. While he might have been held to have anticipated that third parties would extend credit on the faith of his being a partner in the legitimate course of business, I do not think he will be held in law to have anticipated that his associate would bind him by an illegal and immoral act.

■ "The testimony of a party who offers himself as a witness in his own behalf is to be construed most strongly against him when it is self-contradictory, vague, or equivocal. And unless there be other evidence tending to establish his right to recover, he is not entitled to a finding in his favor, if that version of his testimony the most unfavorable to him shows that the verdict should be against him." *Steele* v. *Central of Ga. Ry. Co.*, 123 *Ga.* 237 (51 S. E. 438); *Western & Atlantic R. Co.* v. *Evans*, 96 *Ga.* 481 (23 S. E. 494); *Sheppard* v. *Chappell*, 29 *Ga. App.* 6 (113 S. E. 23); *Southern Bank* v. *Goette*, 108 *Ga.* 796 (33 S. E. 974); *Long Cigar & Grocery Co.* v. *Harvey*, 33 *Ga. App.* 236 (125 S. E. 870). The plaintiff's own testimony, which was the only evidence on the subject, was so contradictory on the question of whether or not he relied upon this representation in endorsing the check that, when construed against him, there is no evidence to support a verdict in his favor, for the reason that "before one not in fact a partner will be estopped from denying his connection with the firm, it must appear not only that he, by admissions, conduct, or otherwise, held himself out as a partner, but

also that the opposite party was misled by the putative status and acted thereon." *Mims* v. *Brook & Co.*, 3 *Ga. App.* 247 (2) (59 S. E. 711). On cross-examination the plaintiff, testifying in his own behalf, stated: "Mr. Moseley told me about Mr. Clarke (the defendant) before he gave me this check. There was something over $2000 in the bank then. The check I endorsed is the $1500 check. . . I say that at the time he showed me the passbook it had entered in it the sum of over $2000. I first met Moseley sometime prior to that date there, some few days before the check was cashed. . . It was probably 10 days before that. I don't know the date. . . You ask when I had occasion to investigate the credit of Mr. E. A. Clarke. Well, I looked into his account right after I signed this note—after(!) I signed the check. I didn't know before. . . *You ask if the reason I endorsed the check was the fact that he* (Moseley) *showed me the passbook that he had a deposit of $2000 in the Bank of Toccoa* and I had met him and he was in business there and was an outstanding citizen. *I will say yes.*" On redirect examination the plaintiff testified: "When I endorsed this check for $1500 for Mr. Moseley, I relied on the statement that Mr. Clarke was his partner or I would never have endorsed the check." Later he testified: "You ask if in my statement a minute ago that I relied on the bank book as the inducing cause of my endorsing the check, if that was the only reason I signed the check or whether it was because of the statement in regard to Mr. Clarke. *Well, more or less on Clarke's account*, because he was the one he said had the money. I would not have endorsed the check for $1500 if it had not been represented to me that Clarke, a man of financial standing, was a partner in the business." On recross examination the plaintiff testified: "You ask if I investigated Mr. Clarke's credit until after the check came back. No, sir, I didn't investigate it. I didn't investigate his credit." Upon what, then, does this evidence show the plaintiff relied? First, the plaintiff after one meeting with the defendant some ten days before and without making any investigation of the defendant's credit endorsed a check drawn on the Albemarle Dining Room because, he says, he relied on Mr. Clarke's credit and Mr. Moseley's representation, made in

Clarke's presence and undenied, that Clarke was a partner (it was not said at that time in what he was a partner) and well-to-do financially. Second, the plaintiff says that the reason (he does not say one reason or one of the reasons, but *the* reason) he endorsed the check for Moseley was because Moseley showed him a passbook indicating that the Albemarle Dining Room had something over $2000 in the bank. Third, the plaintiff says that he would never have endorsed the check if he had not relied on Clarke's credit and Moseley's representation that Clarke was a partner. Fourth, the plaintiff says that he relied, as between Clarke's partnership relationship and the bank book, "more or less on Clark's account because he was the one he said had the money." Under this state of the evidence and when construed against the plaintiff, I am of the opinion that there was no such evidence as to support the verdict upon the essential ground that the plaintiff relied and acted upon the representation to his injury.