41617.   CHAMBLISS v. HALL.

ARGUED NOVEMBER 4, 1965—DECIDED JANUARY 21, 1966—
REHEARING DENIED FEBRUARY 10, 1966.

*Edwin L. Sterne*, for appellant.

*Perry, Walters, Langstaff & Lippitt, Jesse W. Walters*, for appellee.

HALL, Judge. ■ The appellee filed a motion to dismiss upon the grounds (1) that no notice of appeal had been filed with the clerk of the superior court within the time prescribed by law, (2) that no copy of a notice of appeal had been served on the appellee, (3) that no enumeration of errors had been filed within the time prescribed by law, and (4) that no copy of the enumeration of errors had been served on the appellee.

"No appeal shall be dismissed or its validity affected for any cause or consideration of any enumerated error refused except

for (1) failure to file notice of appeal within the time required as provided in this Act or within any extension of time granted hereunder; . . . (4) where no enumeration of the errors relied upon is filed by appellant with the Clerk of the appellate court within the time prescribed by Section 14 hereof. . ." Appellate Practice Act of 1965, as amended, Ga. L. 1965, pp. 240, 243.

On the same day his motion for new trial was overruled the appellant filed an instrument with the clerk of the superior court which is labeled a bill of exceptions. "It matters not by what name any pleading is called, the court will look to the substance rather than to the name. It is elementary that a misnomer of proceedings does not prevail over the substance." *Waller v. Morris,* 78 Ga. App. 821, 822 (52 SE2d 583); *Stanley Home Products v. Lucas,* 107 Ga. App. 260, 263 (129 SE2d 568); *Chance v. Planters &c. Cooperative,* 219 Ga. 1, 5 (131 SE2d 541).

The notice of appeal "shall set forth the title and docket number of the case, the name of appellant and the name and address of his attorney, a concise statement of the judgment, ruling or order entitling the appellant to make an appeal, the court appealed to, [and] a designation of those portions of the record to be omitted from the record on appeal. . ." Section 4, Appellate Practice Act of 1965, Ga. L. 1965, pp. 18, 20. While prepared in a verbose and prolix fashion, the instrument in question contains all the essential material required under the 1965 Act. The fact that it is not in the form suggested in Section 20 of the 1965 Act is immaterial for the reason that the section specifically provides that ". . . any other form substantially complying therewith shall be sufficient."

Section 14 of the new Act, as amended, requires that: "the appellant . . . , shall, at the time the brief is filed in the . . . Court of Appeals . . . , file with the Clerk of the appellate court an enumeration of errors relied upon . . ." Under our rules the appellant's brief must be filed within 15 days after the appeal is docketed. Rule 15, Rules of the Court of Appeals of the State of Georgia. The appellant's instrument, labeled a bill of exceptions and docketed in this court as an

appeal, contains an enumeration of errors with the specificity of that formerly required of assignments of error under the old rules. It therefore more than meets the requirements for an enumeration of errors set out in Section 14 of the Appellate Practice Act of 1965, Ga. L. 1965, p. 18, as amended, Ga. L. 1965, p. 240.

While failure to serve a copy of the notice of appeal or the enumeration of errors is not now a ground of dismissal, the record in this case shows service of the instrument prior to filing and a waiver of "all other and further service."

The new Appellate Practice Rules were adopted by the General Assembly of Georgia for the primary purpose of securing speedy and uniform justice in a uniform and well ordered manner; they were not adopted to set traps and pitfalls by way of technicalities for unwary litigants. The motion to dismiss is denied. See Carter v. Campbell, 285 F2d 68 (5th Cir. 1960).

■ The plaintiff, a Florida realtor, sued the defendant Hall "d/b/a Plantation Services" for breach of a contract in which the defendant allegedly agreed to pay the plaintiff 50 percent of any brokerage commission earned for the sale of land to a prospective purchaser in co-operation with the plaintiff. There was evidence that the defendant handled a sale to this purchaser as the agent of Plantation Services, which was at the time a partnership, and that the defendant was an employee of the partnership. The evidence shows, without contradiction, that Plantation Services received the sales commission. There was no evidence that the defendant received the commission or any part of it.

The plaintiff contends that the defendant is nevertheless individually liable for breach of the contract because he made the contract by correspondence on stationery bearing the letterhead "Plantation Services" with his own name and the names of the owners of that partnership printed thereon, without in any way designating himself as an agent, and in speaking of performance of the contract and the agreement as to commission the defendant used the terms "we" and "us," thus holding himself out as a partner or principal. The plaintiff

cites *Code* § 75-104 and cases dealing with the principle that one who is held out as a partner in a business may become liable upon obligations of the partnership to one who relied on the representation to his detriment. *Barnett Line of Steamers v. Blackmar & Candler,* 53 Ga. 98, 108; *Michael Bro. Co. v. Davidson & Coleman,* 3 Ga. App. 752, 754 (60 SE 362); *Meinhard &c. Co. v. Bedingfield &c. Co.,* 4 Ga. App. 176, 181 (61 SE 34); *Shapleigh Hdw. Co. v. McCoy & Son,* 23 Ga. App. 265 (98 SE 102). Whether a person has held himself out and has been relied upon as a partner is a question of fact. *Carlton v. Grissom & Co.,* 98 Ga. 118, 121 (26 SE 77); *Stewart & Son v. Brown & Co.,* 102 Ga. 836, 840 (30 SE 264); *American Cotton College v. Atlanta Newspaper Union,* 138 Ga. 147, 149 (74 SE 1084); *Clarke v. Woodward,* 76 Ga. App. 181, 186 (45 SE2d 473).

Similar to the principle that a person may become liable as an ostensible partner is the principle that an agent who makes a contract without disclosing that he is acting as an agent or without identifying his principal, or an agent who makes a contract with the express or implied understanding with the other party that he is binding himself individually, will become individually liable on the contract. When an agent in making a contract discloses to the other contracting party that he is acting for a named principal, the principal is responsible and not the agent. *Code* § 4-406; *Tiller v. Spradley,* 39 Ga. 35, 38; Austin-Western Road Machinery Co. v. Veal, 115 F2d 112, 113 (5th Cir. 1940). If the agent would avoid personal liability, the duty is on him to disclose his principal, and the agent is individually liable if he fails to disclose his agency and the identity of his principal. *Willingham, Wright & Covington v. Glover,* 28 Ga. App. 394, 396 (111 SE 206); *Schneider Marble Co. v. Knight,* 37 Ga. App. 646 (141 SE 420); *Ragsdale v. Duren,* 100 Ga. App. 291, 293 (111 SE2d 144); 3 CJS 123, § 216; 3 Am. Jur. 2d 674, § 316; 676, § 320. Whether or not the fact of the agency and the identity of the principal were disclosed or known to the other contracting party is a question of fact which may be shown by direct or circumstantial evidence. 3 Am. Jur. 2d, 678, § 320. And to relieve himself of personal liability the

agent ordinarily has the burden of proving by direct or circumstantial evidence the fact of agency as well as knowledge thereof by the opposite party. *Baltimore & O. R. Co. v. Johnson-Battle Lmbr. Co.*, 37 Ga. App. 729, 731 (141 SE 678). The contract may, depending upon the facts and circumstances, be impliedly one with the agent in his individual capacity. What was the understanding of both parties is a question of fact to be decided by the jury under the circumstances of each case. *Code* § 4-406; *Fleming v. Hill*, 62 Ga. 751, 753; *Partridge v. Hollingshead*, 105 Ga. 278, 283 (30 SE 787); *Phinizy v. Bush*, 129 Ga. 479, 492 (59 SE 259); *Pyle v. Booz*, 10 Ga. App. 760 (73 SE 1085); *Harris v. Southeastern Printers Supply Co.*, 59 Ga. App. 729 (2 SE2d 184); 3 Am. Jur. 2d 678, § 321.

In this case the evidence of the correspondence embodying the alleged· contract would authorize an inference, even though the defendant was only an employee of .the partnership "Plantation Services," that he held himself out as a member of the partnership, or an inference that it was the intention of the plaintiff and the defendant that the defendant was to be bound individually on the contract. *Harris v. Southeastern Printers Supply Co.*, 59 Ga. App. 729, supra. But this evidence did not demand a finding that either of these inferences was the true fact. A trade name may be used under such circumstances that agency will be sufficiently disclosed; but the use of a trade name is not per se a sufficient disclosure but raises a question of fact to be determined by the fact-finding tribunal. *Saco Dairy Co. v. Norton*, 140 Me. 204 (35 A2d 857, 150 ALR 1299); 3 Am. Jur. 2d 677, § 320; Anno. 150 ALR 1303.

When an individual is sued and the evidence shows partnership liability, a motion for nonsuit is in order (*Myers v. Hook*, 11 Ga. App. 517 (75 SE 833)), but not a motion for directed verdict (*Glover v. Maddox*, 98 Ga. App. 548, 559 (106 SE2d 288)). The evidence in this case did not demand a verdict for either the plaintiff or the defendant. The trial court did not err in overruling the plaintiff's motion for judgment notwithstanding the verdict and the general grounds of the motion for new trial.

■ It follows from what we have said in Division 2 that the court's instruction to the jury that they could not return

a verdict for the plaintiff unless they found that the defendant received the commission on the sale was error.

■ The petition alleged four letters as setting forth the substance of the contract. In the first letter dated December 20, 1961, the plaintiff advised the defendant that the plaintiff's client, Mr. Jones, was looking for a large tract of land and described the kind of property Mr. Jones was interested in, and inquired whether the defendant "would be interested in cooperating with me on a fifty-fifty brokerage basis in the event Mr. Jones bought one of your listings." The second letter dated December 26, 1961, from the defendant to the plaintiff, stated, "We will co-broker with you in the normal manner, which is 50-50 if you accompany the prospect, or 1/3 if you send the prospect, and 2/3 to us if we do all the selling and have the listing." The plaintiff then wrote the defendant on December 29, 1961, that, for reasons stated in the letter, "I feel that I would be actively participating in the sale, whether or not, I accompany him on each trip, and therefore would expect the real estate commission to be split on a fifty-fifty basis. . . If you agree, I would appreciate a letter confirming this arrangement." On January 4, 1961, the defendant responded "It was certainly not my intention to convey to you the idea that we expected you to accompany Mr. Jones on each and every trip up here. That certainly was not what I had in mind. I think we are both thinking along the same lines on what would be expected from each other, and a commission split on a fifty-fifty basis is certainly agreeable with us." This and other correspondence between the parties was introduced in evidence. On January 20, 1962, the plaintiff wrote the defendant that "Mr. Jones' desire to buy land in Georgia was based on the assumption that he would sell his Florida land," and due to the possibility of the renewal of an option to purchase the Florida property, "I suppose it would be about July 22, 1962, before he would know whether or not he can purchase the land he would want. I wish to thank you for your cooperation in trying to locate a tract of land in Georgia, and I sincerely hope that we can continue the search in a few months." The plaintiff responded on January 22, 1962, "We shall continue to try

to locate property for Mr. Jones, and should we be successful in doing so, I will call you so that either you or Mr. Jones may come up and inspect the property . . . We would like to thank you for your cooperation in this matter in keeping us posted as to the progress that Mr. Jones is making on the disposal of his property in Florida, and I hope that we will be able to locate something for him within the next few months." On July 31, 1963, the plaintiff wrote the defendant, "Confirming our telephone conversation of yesterday afternoon. I will appreciate it if you will let me know the time and place of the closing of the Minor S. Jones, 3rd, transaction, as soon as this information is available to you. . . I would like to be present at the closing of the above mentioned transaction, and will, of course, appreciate as much advance notice as you can give me."

It appears from the plaintiff's evidence (his letter to the defendant of January 20, 1962), that at the time of the agreement between the plaintiff and the defendant to co-operate as brokers they were making an effort to locate real estate in which Mr. Jones might invest in connection with the sale of his Florida property upon which he had given an option to purchase extending to July 22, 1962. It appears from the correspondence that the parties then intended the co-brokerage agreement to continue beyond July 22, 1962, and contemplated that the plaintiff would inform the defendant concerning the sale of Mr. Jones' Florida property and that the defendant would inform the plaintiff of properties he located in which Mr. Jones might be interested. It is not clear from the writing whether the parties intended the agreement to be co-brokers to apply to this one investment alone or intended the agreement to apply to other purchases that Mr. Jones might make. Nor is it certain from the evidence whether Mr. Jones' purchase involved in this suit was the investment which was contemplated at the time of the agreement between the plaintiff and the defendant or was an entirely different investment.

The evidence showed that Mr. Jones sold part of his Florida property in August 1962, and purchased other Florida property in October 1962, and that the plaintiff had no contact with

him after these transactions until he learned of the contract for the purchase of the Georgia property. Mr. Jones testified that after looking at property in Georgia in 1961 and early in 1962, when he was dealing with the plaintiff, and then selling and buying the properties in Florida, he lost interest in purchasing property in Georgia. The evidence does not show when the negotiations began for the sale to Mr. Jones of the Georgia property purchased by him. The question whether the parties' agreement to share the commission as co-brokers applied to this sale of Georgia property to Mr. Jones, therefore, involved issues of fact for jury determination. "Where a written contract is incomplete and its meaning is uncertain and left to inference, extrinsic evidence is competent for the purpose of showing the intent of the parties and establishing the full meaning of the contract." *DeBeaugrine v. Ward*, 26 Ga. App. 301 (1) (105 SE 868); *Code* § 20-704. The meaning of uncertain terms of a contract is a question of fact, to be determined by a jury in accordance with the mutual intention of the parties. *Code* §§ 20-701, 20-702, 20-703; *Bearden Mercantile Co. v. Madison Oil Co.*, 128 Ga. 695, 703 (58 SE 200); *Atlanta Baggage &c. Co. v. Loftin*, 88 Ga. App. 98 (76 SE2d 92).

For the reasons stated in Divisions 3 and 4, the trial court erred in overruling grounds 4 and 8 of the plaintiff's motion for new trial. Grounds 5, 6, 7, 9, 10, 11, 12, 13, 14, 15 and 16 do not show error in this trial.

*Judgment reversed. Bell, P. J., and Frankum, J., concur.*