### 38295. STAPP v. THE STATE.

MARSHALL, Justice.

On Eddie Stapp's appeal from the entry of judgment on his plea of guilty to the charge of theft by taking and the 12-months' imprisonment sentence, the Court of Appeals affirmed, rejecting his contentions of denial of assistance of counsel and of his unknowing and involuntary entry of the guilty plea. 160 Ga. App. 427 (287 SE2d 234) (1981). We granted certiorari, and reverse on both grounds.

1. There is evidence in the record as follows. When the defendant was charged with theft by taking (stealing five gallons of gasoline from an automobile), he made no attempt to contact a private attorney, since he could not afford his services. Because of his difficulty in reading, writing and understanding what he does read, he had a secretary in the district attorney's office fill in for him their "Declaration of indigency" form, which is used to assist the trial court in determining the defendant's eligibility for appointed counsel, pursuant to the Georgia Indigent Defense Act; Code Ann. Ch. 27-33 (Ga. L. 1979, p. 367).

Under oath, the defendant revealed in the form that he could not afford to retain an attorney to defend him against the misdemeanor charge. To answer the first question on the form: "How much money do you receive at your present job?", the secretary asked, "What is your bring-home pay?" The "Guidelines for Local Indigent Defense Programs" approved by this court pursuant to Code Ch. 27-33, supra, stipulate that "Net income is intended to include only a client's take-home pay, which is the gross income earned by a client *minus those deductions required by law and/or as a condition of employment.*" (Emphasis supplied.) 246 Ga. 839; appendix to Code Ann. Ch. 27-33, supra. The post-conviction hearing showed that the defendant did not have any deductions made by his employer for taxes (state, federal or social security) and that he had an estimated liability for them in the amount of $20.56 per month. Although the form had a space for him to list all his debts which were payable weekly or monthly, and he listed a debt of $1,600 to Walton County Hospital which was payable at $45 per month, there was no space to list extraordinary regularly incurred expenses such as the $125-a-month medical and drug expenses the defendant must pay because his infant daughter is severely anemic.

The judge's law clerk testified that he considered the form to be "inadequate" for making a determination of eligibility for court-appointed counsel, and that he reviewed the form for only about 30 seconds before he made the initial determination that the defendant was ineligible. After the law clerk made his finding, it was reviewed by the trial judge before Stapp testified at the probation revocation hearing of a co-accused, but no additional information was provided.

The Court of Appeals found that the defendant's income of $125 per week, less "certain expenses," exceeded the $310-per-month minimum income for non-indigent status under the above-mentioned guidelines. However, there was uncontroverted evidence that on some weeks the defendant received less than $125 per week because he was not able to work a full week; that he does not own any real property, stocks, bonds, or monies in a checking or savings account; that his wife is unemployed; that his household expenses for food, clothing, utilities, shelter, medical supplies, etc., averaged $586 per month, with his average monthly income being only $452.75, leaving a deficit of $129 per month, which they borrow from his parents.

If the income question had been properly presented to the defendant, he would have revealed an income of $479.44 a month. After subtracting his hospital debt, the court could have found that he had $434.44 in income. If, however, the court had had the

daughter's medical expenses before it and wished to exercise its discretion under Section C of the Uniform Eligibility Guidelines (246 Ga. 840), which provides for "Special Situations" and permits the local indigent defense program to accept a client "who is unable to obtain counsel due to special circumstances such as ... hardship ... ," it could have found that a person who is required to spend 25% of his gross income for medical care and drugs for a chronically ill family member, is entitled to have this amount subtracted from his income. In the present case, the exercise of this discretion would have enabled the defendant to come within the income-eligibility guidelines. Therefore the inadequacy of the form prevented the trial court from exercising its discretion, denying the defendant his right to appointed counsel.

The majority of the Court of Appeals, in holding that the contention of denial of the right to counsel is without merit, refers to the trial court's informing the defendant of his right to *retained* counsel, and the offer and declining of same. However, declining *retained* counsel which he could not afford, did not amount to an intelligent, voluntary and knowing waiver of *any* counsel, in view of the fact that he could have been, but was not, held to be eligible for court-appointed counsel under the guidelines.

2. "The burden is on the state to show affirmatively that a guilty plea was intelligently and voluntarily entered once challenged by the petitioner. Boykin v. Alabama, [395 U. S. 238 (89 SC 1709, 23 LE2d 274) (1968)]; *Roberts v. Greenway,* 233 Ga. 473 (211 SE2d 764) (1975)." *Andrews v. State,* 237 Ga. 66 (1) (226 SE2d 597) (1976).

The evidence in this case does not meet this test. The trial court had before it a 19-year-old defendant who was semi-literate, having an eighth-grade education, but having repeated the last three grades. He had difficulty in reading, writing and understanding what he does read. He had never been arrested or charged with any other misdemeanor or felony. He was unfamiliar with the judicial system and had never had an occasion to talk with an attorney. He appeared in superior court pursuant to a subpoena to testify in another case. After testifying (wherein, without assistance of counsel, he admitted his culpability of the offense charged against him), he was approached by the state about disposing of his case. No friends, family, or counsel was present. He was never arraigned by the state. He was taken by the assistant district attorney to a room and questioned in the presence of two deputies. He was told that the state would recommend, and he could expect to receive, 12-months' probation and a fine if he entered a plea of guilty. He was told that "he could employ his own attorney or he could represent himself," but that the state's recommendation would be the same with or without

an attorney. He was told that "in most instances of a misdemeanor . . . the recommendation of the state was followed by the court."

The trial court informed the district attorney on the record in the presence of the defendant that he would not accept the district attorney's recommendation of 12-months' probation and a $500 fine, and that if the defendant pleaded guilty, he would be sentenced to 12-months' confinement. The district attorney then asked Stapp, "Do you still want to enter your plea of guilty," to which Stapp replied that he did.

The majority of the Court of Appeals held that "Appellant's right to withdraw his plea was implicit in this question asked him by the district attorney." "The fact that here the guilty plea inquiries were addressed to the defendant by the district attorney instead of the trial court is not a ground for reversal." *State v. Germany,* 245 Ga. 326, 328 (265 SE2d 13) (1980). However, the majority opinion here recognized that "[i]t is better practice to specifically tell the accused that he has a right to withdraw his plea . . ." " 'What is at stake for an accused facing . . . imprisonment demands the utmost solicitude of which *courts* are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence.' (Emphasis supplied.) Boykin v. Alabama, supra, pp. 243-244." *Andrews v. State,* 237 Ga. 66, supra, (1). In *State v. Germany,* 246 Ga. 455, 456 (1) (271 SE2d 851) (1980), we held that, "if the trial court intends to reject said plea agreement, the trial court shall, on the record, inform the defendant personally . . . (4) *that the defendant may then withdraw his or her guilty plea as a matter of right.*" (Emphasis supplied.) The defendant testified that he did not know what an indictment, an accusation, a misdemeanor or a felony were; that he did not know that he had a right to a jury trial; that his decision to plead guilty was based on the state's recommendation of probation; and that he did not know that he had the right to withdraw his guilty plea.

We have already held that the defendant was denied benefit of counsel. "Prior to responding to such a charge, any defendant needs capable legal counsel in order to determine such vital questions as whether the indictment is properly drawn, whether the accused has capacity to commit crime, whether the evidence is sufficient to convict and, in the final analysis, whether the defendant should stand trial or appeal to the judge for a lighter sentence. It would be expecting too much of any defendant, alone, to answer for himself such questions as these." *Fair v. Balkcom,* 216 Ga. 721, 728 (119 SE2d 691) (1961).

Under the facts of the record here, we hold that the defendant — unrepresented by counsel, unaware of the nature and consequences

of the plea procedures and of his right to withdraw his guilty plea — did not knowingly, intelligently and voluntarily enter his guilty plea. Accordingly, we reverse the judgment of conviction and sentence, and remand the case to the trial court with direction that the defendant be arraigned as though no plea had been entered, and a determination be made as to his present eligibility for court-appointed counsel.

*Judgment reversed with direction. All the Justices concur, except Jordan, C. J., who dissents.*

DECIDED APRIL 21, 1982.

*Charles A. Mullinax,* for appellant.
*John Strauss, District Attorney,* for appellee.