### 67987. FERNANDEZ v. THE STATE.

Quillian, Presiding Judge.

Damon Fernandez appeals his conviction for the offense of burglary. He does not contest the sufficiency of the evidence to support the conviction but assigns error in the refusal of the court to grant him a continuance and alleges that the court denied him the right to effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and similar provisions of the Georgia Constitution.

When the trial started, Fernandez asked the Court: "Am I going to be tried without an attorney? BY THE COURT: Yes, sir. You've been notified the other day whenever we called this case that your attorney had withdrawn. You did nothing about it. You're here and the Court cannot wait under those circumstances. Do you have any questions for the jurors? BY MR. FERNANDEZ: No." The court proceeded with jury selection and the District Attorney stated the background of this case for the record. He said that the defendant appeared at arraignment without counsel and announced that Mr. James Studdard was his attorney. He entered a plea of not guilty pro se. The DA said that Studdard contacted him on June 28, 1983 and advised him he would not be representing Fernandez. The DA told him that he should tell his client to hire another lawyer and be prepared to go to trial on June 30, 1983. He was contacted by the defendant's father and was asked for advice and he told him the same thing he told Studdard. The DA argued to the court that the defendant was familiar with court procedures as he had been twice convicted for criminal offenses before and had counsel representing him at those times.

The judge stated that he had advised the defendant and his two co-defendants when the trial would be held and that they should have counsel, and defendant knew at that time that Studdard would not be in court. The judge asked the defendant if he was ready to go to trial and he said: "Yes, sir."

At the hearing on the Motion for New Trial, Studdard testified that he had intended to represent the defendant but had a conflict as he was getting married and was going on his honeymoon. He con-

tacted the District Attorney's office and spoke with the Assistant District Attorney, Don Coffey. He said Coffey told him: "he felt like the case would not be reached, but at any rate he had no objection to a continuance. He further stated there was maybe one or two major felonies in front of the Fernandez case . . . he instructed me to write a letter to Judge Whitmire . . ." The letter was offered in evidence but does not appear in the record. A reply was not received. Studdard assumed he had a continuance and so advised the defendant's father. A few days after the letter had been sent, the District Attorney called Studdard and said "the case might be reached and that to prepare to go to trial." Studdard related to the DA his conversation with Coffey and the letter to the Court. Studdard said the DA "was adamant about one thing and that was he was insisting that the case might be reached and I was expected to go to trial." Studdard told him he was going to be out of town and that was "the way we left it."

The defendant testified that he was 20 years of age and had completed the ninth grade in school but now had his "G.E.D." He believed that Mr. Studdard would represent him in the trial of this case. After the trial started he "asked if they were going to go ahead and try me without a lawyer and they said yes. I asked for an appointed lawyer and they said it was too late. They couldn't do that on such short notice. Q. Did the Court allow you any time to retain a lawyer here? A. No, sir. During the recess, we talked to some lawyers seeking advice." He assented to proceed with his trial without an attorney because "I got the impression that they were going to go ahead anyway . . . And they told me that they weren't going to appoint me a lawyer. You know, we had talked to some attorneys that would not take the case on such short notice." Defendant admitted that he had been told on Monday or Tuesday that the trial would be on Thursday and that he knew at that time Mr. Studdard would not be there.

Defendant's father testified at the Motion for New Trial that he had reached an agreement with Mr. Studdard to employ him as his son's counsel in this trial and had "paid him some money." They discussed the case and because Studdard's honeymoon conflicted with the arraignment Studdard told the defendant what to say at the arraignment. He had been told that the case would be postponed and Studdard did not tell his son what to do at trial. He spoke to the District Attorney, Mr. Smith, and was told "that he was going to take Barry [Fernandez] to court with or without a lawyer." He explained the situation to the judge and asked the judge for a continuance. The judge refused his request. They went to see a lawyer, Mr. Fears, and he agreed to take the case "if he could get the trial postponed." The lawyer called the Court and said he was willing to represent the defendant if he could get a continuance. The Court's response was not reported. Mr. Fernandez testified. ". . . we asked the Court to ap-

point an attorney and they told us it was too late. Q. Mr. Smith told you it was too late? A. Yes, sir. Q. That's Mr. Byron Smith, the District Attorney? A. Mr. Byron Smith." Defendant's father was asked why he allowed his son to proceed at the trial without a lawyer. He responded: "He didn't have any other choice. He was told to represent himself or that would be it." *Held*:

The defendant has combined all of his enumerations of error and argues that "[t]he basic issue raised in each . . . is the denial of Appellant's right to counsel and his right to effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the Constitution of the United States . . ." We agree and will address only that issue.

The defendant was charged with the offense of burglary — a felony. "A person charged with a felony in a state court has an unconditional and absolute constitutional right to a lawyer. Gideon v. Wainwright, 372 U. S. 335. This right attaches at the pleading stage of the criminal process, Rice v. Olson, 324 U. S. 786, and may be waived only by voluntary and knowing action. Johnson v. Zerbst, 304 U. S. 458; Carnley v. Cochran, 369 U. S. 506. Waiver will not be 'lightly presumed,' and a trial judge must 'indulge every reasonable presumption against waiver.' Johnson, supra, at 464." Boyd v. Dutton, 405 U. S. 1, 2 (92 SC 759, 30 LE2d 755). "It is clear, however, that should a defendant choose to represent himself, he must have had an opportunity to voluntarily, knowingly, and intelligently waive his right to counsel." *Rogers v. State*, 156 Ga. App. 466 (1) (274 SE2d 815).

Our Supreme Court has held that "[i]n determining whether or not an accused has adequately waived his right to counsel and elected to exercise his constitutional right to represent himself, the courts will apply the standard set forth in Johnson v. Zerbst, 304 U. S. 458 . . . that 'A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege' . . . It is also clear from Johnson v. Zerbst that the trial judge has the responsibility of determining whether the accused has intelligently waived his right to counsel. 'The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused — whose life or liberty is at stake — is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would appear fitting and appropriate for that determination to appear upon the record.' . . . We therefore hold that in future cases, the record should reflect a finding on the part of the trial court that the defendant has validly chosen to proceed pro se. The record should also show that this choice was made after the de-

fendant was made aware of his right to counsel and the dangers of proceeding without counsel." *Clarke v. Zant,* 247 Ga. 194, 196-197 (275 SE2d 49).

The record in the instant case shows that the defendant thought he had counsel for his trial. Then counsel assumed he had a continuance after he spoke with the Assistant District Attorney. After counsel was notified by the District Attorney that he did not have a continuance and the defendant would be tried "with or without counsel," the counsel withdrew and left on his honeymoon. Attempts by defendant and his father to hire another counsel were not possible because of the court's refusal to grant a continuance. Defendant asked for counsel to be appointed and was told by the District Attorney that his request was too late. The defendant's father asked the judge for a continuance which was denied. *At the opening of the trial* the defendant asked the judge if he was going to be tried without an attorney. The judge replied: "Yes, sir." This confirmed what the District Attorney had told the defendant's retained counsel before trial. After the jury had been impaneled the judge asked defendant if he was ready to go to trial and receiving an affirmative answer he directed that the jury be brought in. Thereafter he stated: "The Court has informed you and you are aware of the seriousness of the charge and the difficulty of going into trial without counsel. You will be given an opportunity to ask questions of the witnesses and to speak to the jury as if you were an attorney in your own behalf." The record does not reflect that the court had previously informed the defendant of either the seriousness of the charge or the difficulty of going to trial without counsel. Further, this belated advice, after the decision had been made to require the defendant to defend himself does not comply with Gideon v. Wainwright, 372 U. S. 335, supra, or *Clarke v. Zant,* 247 Ga. 194, supra, which mandates that defendant's choice be made after being made aware of such rights.

It is arguable that defendant was not entitled to appointment of counsel if he was not indigent. *Stapp v. State,* 249 Ga. 289 (290 SE2d 439). In this connection, we note that his prior counsel had been retained by his father and would be a neutral circumstance on the issue of indigency. In *Brown v. State,* 161 Ga. App. 663 (289 SE2d 535), this court dealt with a similar problem in which defendant's claim of indigency was disallowed and his request for appointment of counsel was denied. Citing *Clarke v. Zant,* supra, which held that in future cases the record should reflect the discussion of the waiver of counsel, we found "the same advice and warning necessary when a defendant, for whatever reason, appears for trial without counsel." 161 Ga. App. at 664. The record contains no discussion of waiver of the right to counsel or the question of indigency.

Our Supreme Court, in *Ward v. State,* 248 Ga. 60 (3) (281 SE2d

503), found that "the record [was] silent as to defendant's indigency, a finding of which would have entitled [him] to appointed counsel. The trial court failed to advise the defendant that [he] had the right to appointed counsel if [he] could not afford one . . . Thus, we must remand for a hearing to determine defendant's indigency. If [he] was indigent, [he] was entitled to be advised of the right to the appointment of counsel. If [he] was not indigent, [his] failure to retain counsel constituted waiver. *Bostick v. Ricketts*, 236 Ga. 304 (2) (223 SE2d 686) (1976)."

We find that the trial court failed to properly or timely explain to the defendant his right of counsel and to determine whether he was indigent which would require appointment of counsel. Accordingly, we remand for a hearing to determine defendant's indigency and the issue of waiver of counsel.

*Case remanded with direction. Birdsong and Carley, JJ., concur.*

DECIDED JUNE 22, 1984.

*Anthony L. Harrison,* for appellant.
*E. Byron Smith, District Attorney,* for appellee.