## 44546. HENDRICK v. THE STATE.
(361 SE2d 169)

PER CURIAM.

Hendrick was indicted and tried for the malice murder and felony murder of his two-year-old son. He was convicted on both counts, but the trial court sentenced him to life in prison only on the malice murder count.[1] We vacate the conviction and sentence on the malice murder count, and order that the trial court impose a life sentence on the felony murder count.

Medical evidence established that the victim had arm fractures, bruises, and head injuries consistent with child abuse; that the abuse occurred over a period of several weeks; and that the cause of death was blunt head trauma that damaged the brain. Hendrick's wife was also tried and convicted of the murder of the child, and her conviction has been affirmed on appeal. *Hendrick v. State*, 257 Ga. 17 (354 SE2d 433) (1987).

1. The appellant orally requested a jury charge on alibi, but the trial court refused to so charge the jury. Hendrick enumerates this failure as error. There is no evidence to indicate that Hendrick was not present during the time in which the child's injuries occurred. On the contrary, the record indicates that the child was in Hendrick's joint custody during the period of time in question. The evidence therefore did not warrant a charge on alibi, and the court did not err in refusing to give one. *Copeland v. State*, 241 Ga. 370 (1) (245 SE2d 642) (1978). See generally *Harper v. State*, 249 Ga. 46 (3) (287 SE2d 211) (1982).

2. Hendrick claims the trial court erred in submitting to the jury both the malice murder and felony murder counts. We disagree. Under OCGA § 16-1-7 (a), "[w]hen the same conduct of an accused

---

[1] The child died February 10, 1984. Hendrick and his wife were jointly indicted on June 14, 1984. Hendrick was convicted on March 20, 1985, and sentenced on the malice murder charge on March 22, 1985. A motion for new trial was filed on March 25, 1985. The transcript was certified by the court reporter on July 7, 1986. A hearing on the motion for new trial was held October 21, 1986, and the trial court orally denied the motion at that time. The notice of appeal was filed on December 19, 1986. The case was docketed on April 14, 1987, and submitted for decision without oral arguments on June 3, 1987. An order denying the motion for new trial was entered on July 17, 1987, nunc pro tunc to October 21, 1986. We note that the fact that Hendrick's notice of appeal was prematurely filed does not operate to defeat his right of appeal. *Gillen v. Bostick*, 234 Ga. 308 (1) (215 SE2d 676) (1975); *Stewart v. State*, 257 Ga. 211, fn. 1 (356 SE2d 515) (1987).

may establish the commission of more than one crime, the accused may be prosecuted for each crime." The state thus appropriately indicted and tried Hendrick on both counts. See *Dunn v. State*, 251 Ga. 731 (5) (309 SE2d 370) (1983). Moreover, the trial court properly imposed only one life sentence on Hendrick. OCGA § 16-1-7 (a); *Biddy v. State*, 253 Ga. 289 (2) (319 SE2d 842) (1984).

3. In his third enumeration of error Hendrick contends that the evidence is not sufficient to support his conviction. Although it is problematic whether the evidence is sufficient to support the malice murder conviction, we conclude that it is sufficient to support the felony murder conviction.[2] The underlying felony used to support the felony murder conviction was the offense of cruelty to children. OCGA § 16-5-70. The evidence shows that Hendrick lived with the victim during the period of time in which the severe beatings in question were administered to the child; that Hendrick gave deceitful answers during a polygraph examination (the state and Hendrick stipulated to the admissibility of the results of the exam); that Hendrick previously abused another of his children; and that Hendrick showed no emotion when told of the impending death of his child. We conclude that the evidence shows that the death of Hendrick's son occurred while Hendrick was in the commission of the felony of cruelty to children, and is sufficient to satisfy the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). We therefore vacate the conviction and sentence on the malice murder count, and order that the trial court impose a life sentence on the felony murder count.

*Judgment affirmed. All the Justices concur, except Smith and Bell, JJ., who dissent as to Division 3 and to the judgment.*

BELL, Justice, dissenting.

I reluctantly conclude that the evidence in this case is insufficient to support either Hendrick's malice murder or felony murder convictions.

1. As for malice murder, I agree, of course, that the evidence clearly shows that the victim was a severely battered child. I further agree that the inescapable conclusion is that either Hendrick or his wife administered the beatings, for they were the only people with the opportunity to do so. However, even assuming that the evidence is sufficient to conclude that Hendrick actually beat the child, it is not

---

[2] The fact that the trial court only sentenced Hendrick on the malice murder count does not nullify the conviction on the felony murder count, which was properly submitted to the jury. Because Hendrick could not be punished twice for the same conduct, see OCGA § 16-1-7 (a), it would have been improper for the trial court to have imposed more than one life sentence.

sufficient to show that he administered the blows to the child's head, which were the only fatal blows. Perhaps Hendrick only beat the child on the legs or back, and never hit him in the head area. Hendrick's wife, the victim's stepmother, did not work outside the home, and therefore spent more time with the victim than Hendrick. It is a reasonable hypothesis that she administered the blows to the child's head. Since this is an entirely circumstantial evidence case, the state had the burden to exclude that hypothesis. I therefore cannot conclude that the evidence is sufficient to support Hendrick's malice murder conviction.

2. Hendrick's felony murder conviction is based on the underlying felony of cruelty to children, see OCGA § 16-5-70. To sustain this conviction, the evidence must show that Hendrick caused the child's death during the commission of the felony of cruelty to children. OCGA § 16-5-1 (c). Assuming that the evidence cited by the majority[1] is sufficient to conclude that Hendrick beat the child and therefore can be said to have committed the felony of cruelty to children, I find, as previously noted, that it is a reasonable hypothesis under the evidence presented that Hendrick's wife, and not Hendrick, beat the child around the head and therefore caused the child's death. Thus, I cannot conclude that Hendrick *caused* the victim's death *during the commission* of the felony of cruelty to children.[2]

3. For future cases such as this one, I would like to note two theories which could have been used to convict Hendrick of malice murder, but which were not presented to the jury.

a. The first is based on our statute concerning parties to a crime. OCGA § 16-2-20. In the instant case, the evidence would have warranted a charge that a person can be charged with and convicted of the commission of a crime if he "intentionally aids or abets in the commission of the crime," OCGA § 16-2-20 (b) (3). Hendrick, I believe, could have been convicted under this theory, but it was not charged to the jury and cannot be used to affirm Hendrick's conviction.

b. A different theory which could have been used to support Hendrick's conviction is based on the concept that one can be held crimi-

---

[1] I disagree with the majority's reliance upon the results of the polygraph exam. Although we have accepted the use of the results of polygraph exams upon stipulation of the parties, we have never determined whether polygraph exams are scientifically reliable. See *Harper v. State*, 249 Ga. 519 (1) (292 SE2d 389) (1982); Agnor's Ga. Evid. (2d ed.), § 10-14.

[2] See *Durden v. State*, 250 Ga. 325, 329 (5) (297 SE2d 237) (1982), in which we held that "[w]here one commits a felony upon another, such felony is to be accounted as the efficient, proximate cause of the death whenever it shall be made to appear either that the felony directly and materially contributed to the happening of a subsequent accruing immediate cause of the death, or that the injury materially accelerated the death, although proximately occasioned by a pre-existing cause."

nally responsible for an omission to act. It is well-settled in other jurisdictions that a parent can be held criminally responsible for omitting to take proper care of his or her child, and that this responsibility is based on a parent's duty to protect the child. E.g., Lafave and Scott, Handbook on Criminal Law, § 26 (1972); *People v. Burden*, 140 Cal. Rptr. 282, 288-293 (Cal. Ct. App. 1977); *Biddle v. Commonwealth*, 141 SE2d 710 (3) (Va. 1965); *Harrington v. State*, 547 SW2d 616 (1,2) (Tex. Crim. App. 1977); *Commonwealth v. Howard*, 402 A2d 674, 676-678 (Pa. Super. Ct. 1979); *Goldsmith v. State*, 344 S2d 793, 798 (Ala. Crim. App. 1977). Other aspects of the omission-to-act theory are that the parent must have knowledge of the harm (such as starvation or physical pain) to his child, and must have the ability to carry out the steps necessary to protect the child. E.g., Lafave and Scott, supra at 187-189.

This approach to culpability is consistent with Georgia law. OCGA § 16-2-1 defines a crime as "a violation of a statute of this state in which there is a joint operation of an act or *omission to act* and intention or criminal negligence." (Emphasis supplied.) Moreover, in Georgia a parent has a statutory duty "to provide for the maintenance, protection, and education of his child. . . ." OCGA § 19-7-2. Finally, this court, as well as courts in other jurisdictions, has held that if a parent's omission to act is malicious or wilful and the child in question dies, then the parent is guilty of murder. E.g., *Lewis v. State*, 72 Ga. 164 (1883); *Lackey v. State*, 246 Ga. 331 (8) (271 SE2d 478) (1980); *People v. Burden*, supra, 140 Cal. Rptr.; *Harrington v. State*, supra, 547 SW2d; *Goldsmith v. State*, supra, 344 S2d.

A good illustration of the omission-to-act theory at work is the case of *People v. Burden*, supra, 140 Cal. Rptr. In that case the court was faced with the question whether the evidence was sufficient to support the second degree murder conviction of the defendant. The evidence showed that the defendant was aware of the starvation of the victim and took no steps to prevent it. The court found that the state had sufficiently proved implied malice, and upheld the conviction. California's implied malice standard, see, *Burden*, supra at 291, is the same as the one employed in this state, namely that, the defendant's conduct must show an "abandoned and malignant heart," which has been construed to mean conduct exhibiting a "reckless disregard for human life," see *Bishop v. State*, 257 Ga. 136, 138 (356 SE2d 503) (1987); *Flynn v. State*, 255 Ga. 415 (2) (c) (339 SE2d 259) (1986); *Lackey v. State*, supra, 246 Ga. at 337.

Although the murder convictions based on the omission of the parent to perform his or her parental duty generally have involved

the starvation of the victim or the failure to provide medical aid,[3] I see no reason why the omission-to-act theory cannot be applied to a parent who sits idly by while knowing that his or her child is being savagely beaten on a repeated basis. In many such cases, including the instant one, I believe malice may be implied from the parent's knowledge of the beatings and the parent's failure to take the steps necessary to protect the child.

The record here contains detailed evidence that the victim received a series of beatings, including the beating causing the fatal head trauma, over a period of time during which the victim was in the custody of Hendrick and his wife. Even if Hendrick did not, himself, administer the beatings to the victim, a rational juror could have inferred from the evidence of the nature and extent of the child's injuries, as well as from the fact that the child was in Hendrick's custody, that Hendrick must have known of the injuries and the beatings that caused them. Moreover, under these circumstances a rational juror could have inferred that Hendrick exercised a "reckless disregard for human life" by failing to protect or aid his son.

Unfortunately, however, this theory was not pursued in the indictment of Hendrick or in the charge to the jury. Therefore, it cannot be used to uphold his conviction.

I am authorized to state that Justice Smith joins in this dissent.

DECIDED OCTOBER 21, 1987.

*James W. Bradley,* for appellant.

*Robert E. Keller, District Attorney, Michael J. Bowers, Attorney General, J. Michael Davis, Assistant Attorney General,* for appellee.

---

[3] See, e.g., *Lewis v. State,* supra, 72 Ga.; *Lackey v. State,* supra, 246 Ga.; *People v. Burden,* supra, 140 Cal. Rptr.; *Harrington v. State,* supra, 547 SW2d; *Goldsmith v. State,* supra, 344 S2d.