A96A0679. LIVINGSTON v. THE STATE.
A96A1256. SMITH v. THE STATE.
(472 SE2d 317)

BEASLEY, Chief Judge.

Because these cases present similar jurisdictional considerations, they will be treated together. Case No. A96A0679 involves Livingston, who was convicted of conversion of payments for improvement of real property (OCGA § 16-8-15) and four counts of first degree forgery (OCGA § 16-9-1). He represented himself at trial. Case No. A96A1256 involves Smith, who was convicted of armed robbery (OCGA § 16-8-41 (a)) and sentenced to life in prison. Both appeal from denials of motions for new trial.

1. Although there has been no motion to dismiss filed in either case, " '[i]t is not only the right but the duty of a reviewing or appellate court to raise the question of its jurisdiction in all cases in which there may be any doubt as to the existence of such jurisdiction.' . . . [Cit.]" *Landor Condo. Consultants v. Colony Place Condo. Assn.*, 195 Ga. App. 840, 841 (395 SE2d 25) (1990). When appeal is from the denial of a motion for new trial, the notice of appeal "shall be filed within 30 days after the entry of the order granting, overruling, or otherwise finally disposing of the motion." OCGA § 5-6-38 (a).

Although Livingston's trial concluded February 24, 1995, judgment and sentence was not filed until May 9, and he moved for a new trial on June 1. His notice of appeal states that the motion for new trial was denied on October 16, although the court's order recites that the motion was heard on October 30. In either event, his notice of appeal, filed November 10, was within 30 days after the court orally denied his motion. The order was signed and entered December 1. Thus, Livingston's notice of appeal preceded the entry of the written order.

Smith was convicted on August 5, 1994. He filed a motion for new trial on September 1, 1994, but no hearing was held until January 22, 1996.[1] The court apparently announced at the hearing that the motion would be denied, and Smith filed his notice of appeal the next day, January 23. The court's order denying the motion for new trial was signed on January 24 and entered on January 25.[2] Thus,

---

[1] The trial transcript was completed October 14, 1994, and was filed with the court clerk June 30, 1995, long before the hearing.

[2] Although the order states the hearing was held on January 24, the clerk's office

Smith's notice of appeal was two days before entry of the written order.

In a division case, this Court recently held, contrary to previous practice, that premature notices of appeal do not properly invoke this Court's jurisdiction and such appeals must be dismissed. *Staton v. State*, 219 Ga. App. 316, 317 (464 SE2d 888) (1995). In doing so, we interpreted the Georgia Supreme Court's opinion in *Rowland v. State*, 264 Ga. 872 (1) (452 SE2d 756) (1995), to encompass appeals with prematurely filed notices as the type of procedurally deficient appeals that require dismissal. Upon reflection, we do not believe *Rowland* requires that conclusion.

Before *Rowland*, the Supreme Court determined in *Gillen v. Bostick*, 234 Ga. 308, 310-311 (1) (215 SE2d 676) (1975), that prematurely filed notices of appeal did not divest the appellate courts of jurisdiction. See also *Hendrick v. State*, 257 Ga. 514, n. 1 (361 SE2d 169) (1987); *Stewart v. State*, 257 Ga. 211, n. 1, 212 (356 SE2d 515) (1987). In both *Hendrick* and *Stewart*, the Court pointed out that "the fact that [defendant's] notice of appeal was prematurely filed does not operate to defeat his right of appeal. [Cits.]"

The ruling in *Gillen* brought about a decision on the merits of such cases, which is the State's public policy. OCGA § 5-6-30; *Okross v. State*, 205 Ga. App. 694, 695 (423 SE2d 291) (1992). It is also in keeping with the spirit of federal constitutional law in criminal cases. See *Eller v. State*, 183 Ga. App. 724 (360 SE2d 53) (1987). Moreover, it prevented piecemeal appellate review and advanced the defendant's right to appeal without prejudicing the State by offending its right to certainty as to the judgment or order being appealed. *Gillen*, supra. Significantly, it achieved finality of criminal convictions at the earliest possible time, a feature of the criminal justice system of great importance to the public if not to a defendant.

Following these decisions, this Court viewed prematurely filed notices as reaching maturity and effectiveness upon the filing of the judgment or order. *Okross*, supra; *Brinson v. State*, 191 Ga. App. 151 (1) (381 SE2d 292) (1989); *Royal v. State*, 189 Ga. App. 756 (1), 757 (377 SE2d 526) (1989); *Shirley v. State*, 188 Ga. App. 357 (373 SE2d 257) (1988); *Eller*, supra. Such a notice of appeal is not jurisdictionally defective but only procedurally irregular. Because the notice is present in the trial court throughout the 30-day statutory period, indeed from the very beginning of the period, such notice is not untimely, and in fact gives the appellee a head start because it then knows of defendant's appeal decision soon after the court pronounces its ruling in open court. If the judgment or order to which it refers is

advises it was actually January 22.

never filed, the notice of appeal is never effective because the case remains pending in the trial court. *Okross,* supra at 695. This is the productive and realistic manner in which the Court of Appeals treated such notices immediately prior to *Staton* and *Rowland.*

Treating a premature notice as effectively filed upon entry of the order denying the motion for new trial does not violate either the letter or the spirit of OCGA § 5-6-38 (a). Since it lacks efficacy before the order is entered, it is simply not legally cognizable until that point.[3] Then it is not only timely under OCGA § 5-6-38 (a), but as timely as any notice could ever be. This treatment actually furthers the purposes of the 30-day limitation in OCGA § 5-6-38 (a), to keep the case moving towards final disposition while affording a reasonable opportunity for the losing party to consider the appeal. The legislature determined that 30 days was a sufficient period of time, but it never stated that a notice of appeal filed in advance of the actual, clerical entry of the order would gain no legal effect. In fact, it requires expedition of criminal appeals when defendants are incarcerated, as both these defendants are, and the trial court must alert the appellate court of that fact so the objective can be achieved. OCGA § 5-6-43 (c).[4]

In the view of premature notices that we have taken since *Gillen,* the notice must clearly indicate the order from which it seeks relief; otherwise prejudice to the appellee may result. *Gillen,* supra. The notice of appeal in *Staton,* supra at 316, did not "minimally suffice as a timely notice of appeal inasmuch as it contained no reference to the . . . judgment from which the appeal was filed. See OCGA § 5-6-37." The cases presented here, like many criminal cases, pose no problem in this regard. There is a familiar pattern: a hearing on the motion for new trial is held, the court announces it is denied, and the appellant promptly files a notice of appeal. The only problem is that the appellant is more prompt than the court, and the order denying the motion is entered after the notice. There is no prejudice to the State; the notice makes it clear what is being appealed. The motion is still in the breast of the court until the order is entered, and if the court decides to *grant* the motion, the notice from a nonexistent *denial* is void.

In *Rowland,* the Supreme Court was presented only with notices of appeal filed after the expiration of the statutory period. Defendant

---

[3] The clerks in these two cases understood it to be so and transmitted the records and transcripts within 20 days (in Smith's case, slightly more than 20 days) from the orders which activated the notices of appeal. OCGA § 5-6-48 (d). They did not ignore the notices.

[4] Smith is in prison; Livingston has suffered "an actual loss of liberty" by being sentenced to a work-release diversion center. See *Ward v. State,* 248 Ga. 60, 64 (3) (281 SE2d 503) (1981).

Rowland was sentenced on November 8, 1993; his motion for new trial was filed November 15, amended February 7, 1994, and denied March 9, 1994; and his notice of appeal was filed 43 days after the denial. *Rowland*, supra at 872, n. 1. Defendant Starks, whose appeal was treated in the same opinion, was convicted in 1990, and after appeal and remand, his motion for new trial was denied on November 16, 1993, but his notice of appeal was not filed until 31 days after the denial. Id. at 872, n. 2.

After reviewing various methods by which the appellate courts of this state have reviewed the merits of procedurally deficient criminal appeals, *Rowland* determined that appeals with late-filed notices could be properly dismissed, as the availability of an "out-of-time appeal" sufficiently protected a defendant's constitutional rights. *Rowland*, supra at 875 (2). The opinion does not mention premature notices of appeal, does not mention, much less overrule, *Gillen*, and does not refer to the treatment the Supreme Court itself and this Court have given to premature notices since *Gillen*.

Good reason answers why this is so. There is a vast difference between a notice which is filed *beyond* the time allowed by law, and a notice which is filed before it *must* be. The late notice fails to keep the case extant and to shift jurisdiction to an appellate court. *McKinney v. State*, 187 Ga. App. 702 (371 SE2d 196) (1988). The appeal opportunity dies with the passage of the prescribed period of time, and appellate jurisdiction never attaches. On the other hand, the early notice is dormant in its effect until the ruling it complains of is entered of record. It then effects appellate jurisdiction instantly. It is not "untimely," which is the concern addressed in *Rowland*. The law sets a maximum time for filing a notice of appeal so as to advance the case to finality without undue delay. That is the primary purpose of the 30-day limit in OCGA § 5-6-38 (a); it serves to assure speedy justice, one of the objectives of the Appellate Practice Act. See *Chambliss v. Hall*, 113 Ga. App. 96 (1), 98 (147 SE2d 334) (1966).

It would be ironic as well as illogical to relegate defendant to the cumbersome out-of-time appeal procedure which elongates a case's life just because the time *limitation* for direct appeals, and its purpose, were met by alert counsel's early physical filing of the notice rather than by its physical filing on the day the court's order was actually entered. Its anticipatory nature does not deprive it of fulfilling the statutory time requirement.

In *Staton*, the defendant was convicted and sentenced on December 7, 1994. His motion for new trial, which was filed on December 20, was heard on March 16, 1995, and orally denied. He filed his notice of appeal on March 30, within 30 days of the court's announced ruling, but the court's order denying the motion was not actually entered until April 3. On April 21, within 30 days of entry, he asked

this Court in a "Notice of Filing" to take notice of his earlier notice of appeal, but we decided he had not invoked our jurisdiction.

The *Staton* opinion does not address *Gillen* and its reasoning. Rather, *Staton* concludes that *Rowland* impliedly included premature notices of appeal as procedurally deficient because *Rowland* cited *Boothe v. State*, 178 Ga. App. 22 (342 SE2d 9) (1986), a case involving a notice of appeal filed approximately six months before entry of the order denying the motion for new trial. However, *Rowland* involved only late-filed notices of appeal and cited *Boothe* merely as an example of a method by which we have ensured due process of law as required in *Evitts v. Lucey*, 469 U. S. 387, 395 (105 SC 830, 83 LE2d 821) (1985), in "an abundance of caution" examining a record for substantive error even when an appeal is dismissed on jurisdictional grounds. *Boothe*, supra at 23. That method lost viability after *Rowland*'s determination that an out-of-time appeal adequately protects a defendant's appellate rights. *Rowland*, supra at 875-876 (2).

Further, *Boothe*'s treatment of the premature notice as a defect requiring dismissal had been overruled long before *Rowland* was decided, in *Eller*, supra, based upon the rule set forth in *Gillen*. Thus, *Staton*'s assumption that *Rowland*'s citation of *Boothe* brought premature notices into the ambit of *Rowland*'s determination that dismissal is appropriate is faulty; premature notices were not considered procedurally or jurisdictionally deficient when *Rowland* was decided. Given the state of the law then, as well as the fact that *Rowland* addressed neither premature appeals, nor the Supreme Court's decisions in *Gillen* and opinions applying *Gillen* to criminal cases, nor the manner in which this Court has addressed premature notices since *Eller* and *Gillen*, we conclude that *Rowland*'s reference to *Boothe* is only for the now unnecessary method of review that *Boothe* used. We do not read *Rowland* as overruling our long-standing treatment of premature notices of appeal, and there is no reason to infer that it intended to overrule *Gillen* or encompass prematurely filed notices of appeal.

Appellants Livingston and Smith have not been dilatory, requiring out-of-time appeals because they did not exercise their rights quickly, nor is there any question what judgments are appealed. The early notices and later entered judgments present no appellate delay at all, much less delay prejudicial to the State.

To consider these and similar premature notices of appeal as void would simply promote fragmentary, wasteful review. From shortly after the very time the trial courts announced the denials of new trials, defendants have persisted in their efforts to obtain review. The delay imposed by dismissing these cases and requiring each appellant to file a motion for out-of-time appeal would be espe-

cially egregious in Smith's case; he was pronounced guilty and sentenced to life in prison on August 5, 1994, and his conviction has not yet been reviewed. To stall review any longer, solely because his notice of appeal was filed two days before the judgment was entered, violates our responsibility to decide appeals on their merits when possible. OCGA § 5-6-30. Even if we favored dismissing, we would still be faced with the Supreme Court's decisions in *Gillen*, *Hendrick*, and *Stewart*, which allow premature filing and have not been overruled, either explicitly or by implication.

*Staton* is in error and is overruled; the notices of appeal in these cases invoked this Court's jurisdiction.

### Case No. A96A0679

2. Although Livingston enumerates other errors, his primary contention is that he was deprived of representation by counsel, violating the Sixth Amendment to the United States Constitution. Although he recites also Ga. Const. of 1983, Art. I, Sec. I, Pars. XII and XIV, we do not address a state constitutional basis for his claim. It is neither embraced within the scope of the enumeration nor pursued as an independent source of rights. Most of the cases he cites involve only the federal constitutional right: *May v. State*, 217 Ga. App. 427 (457 SE2d 694) (1995); *Williams v. State*, 192 Ga. App. 317 (384 SE2d 877) (1989); *Fernandez v. State*, 171 Ga. App. 290 (319 SE2d 503) (1984); *Ward*, supra; *Clarke v. Zant*, 247 Ga. 194, 197 (275 SE2d 49) (1981). The appellate courts of this state currently do not recognize any difference in the rights afforded by the separate constitutions in this regard. *Smith v. State*, 211 Ga. App. 567 (440 SE2d 44) (1993), rev'd, 264 Ga. 634 (452 SE2d 90) (1994)[5]; *Stevens v. State*, 199 Ga. App. 563, 566 (2) (405 SE2d 713) (1991); *Butler v. State*, 198 Ga. App. 217, 219-220 (1) (b) (401 SE2d 43) (1990) (physical precedent only); *Burnett v. State*, 182 Ga. App. 539, 540 (1) (356 SE2d 231) (1987); *Reid v. State*, 237 Ga. 106, 108 (2) (227 SE2d 24) (1976).

Livingston's right to counsel arose because he was facing a state felony charge. *Gideon v. Wainwright*, 372 U. S. 335 (83 SC 792, 9 LE2d 799) (1963); OCGA § 17-12-38.1; *Hasty v. State*, 215 Ga. App. 155, 158 (2) (450 SE2d 278) (1994); compare *Capelli v. State*, 203 Ga. App. 79 (1) (416 SE2d 136) (1992).

After indictment, Livingston's retained counsel was allowed to withdraw over his objection. By the time of his arraignment six months later, Livingston had not retained new counsel but informed the court he was not there to represent himself. He also stated that

---

[5] That does not mean that, when properly raised, preserved, and briefed, it could not be done.

despite having talked with at least four other attorneys, he did not have one and implied he could not afford one because his original counsel had kept the funds he had available for this purpose.

At the end of the hearing, the court stated that all it could do was "continue the case until next year and give [Livingston] an opportunity to get another lawyer." The court granted a continuance without clarifying whether Livingston could afford an attorney and did not order an indigency review. At neither the arraignment nor the hearing on counsel's request to withdraw, nor at the beginning of trial, did the court ever inform Livingston that an indigent defendant had a right to appointed counsel, warn him of the dangers of proceeding without counsel, or inquire why he had not retained counsel. See *Jones v. State*, 212 Ga. App. 676, 678 (1) (442 SE2d 908) (1994); *Clarke*, supra at 197. No other transcripts of pre-trial hearings appear in the record.

Livingston argues he was deprived of his right to counsel because the court failed to fully inform him that an attorney could be appointed to represent him if he could not afford one and that it was dangerous to proceed without one. The State contends Livingston is a non-indigent defendant who was not diligent in securing counsel, and that the court found that Livingston had not exercised diligence. True, diligence is a factual question within the court's discretion. *Shaw v. State*, 251 Ga. 109, 111 (303 SE2d 448) (1983). However, the record does not show the court found Livingston to be non-indigent, or even that the public defender's office or some other agency ever examined Livingston's financial status. See *Houston v. State*, 205 Ga. App. 703, 704 (423 SE2d 431) (1992). Contrary to the State's contention, there is also no finding of non-diligence; from the record, it appears the court never inquired into indigency or diligence and never exercised its discretion.

The State also argues that Livingston has not shown himself to have been indigent at the time of trial. A defendant claiming he was denied an appointed attorney to which he was entitled because of indigency must show he was indigent. *Bostick v. Ricketts*, 236 Ga. 304, 306 (2) (223 SE2d 686) (1976). Even if the record showed Livingston had been found to be non-indigent, "the court does have some obligations with respect to a non-indigent defendant appearing before it pro se: ' ". . . the trial judge has a duty to delay the proceedings long enough to ascertain whether the defendant has acted with reasonable diligence in obtaining an attorney's services and whether the absence of an attorney is attributable to reasons beyond the defendant's control." (Cit.)' [Cits.]" *Flanagan v. State*, 218 Ga. App. 598, 600 (462 SE2d 469) (1995). This duty "is based on the right to counsel, which non-indigent as well as indigent defendants have, rather than the right to appointed counsel, which they do not."

(Emphasis omitted.) Id. The consequences of Livingston's lack of counsel are shown by the unskilled and unknowing manner of his self-representation.

The court did not inquire as to why Livingston was not represented but simply asked if the parties were ready. Livingston answered: "Yes sir, as ready as we can be." The court responded: "Sir?," to which Livingston replied: "Yes, sir."

Later, after the jury had been chosen but before opening statements, a discussion occurred outside the jury's presence concerning what information could be presented about why Livingston was not represented. After noting that Livingston's original counsel had withdrawn a year earlier, the court stated: "And I don't want [the jury] to feel like, just from the Court's point of view whether it's fair for us to — for the impression to be given to them that you have not been afforded an opportunity to hire counsel on your own; and that we're not making you go to trial without a lawyer; it's just that it has gone on so long it's time to get it over with, and you had that option, and now you don't have one." Livingston's only response was: "Exactly." During the discussion, it was also revealed Livingston had spoken with five attorneys but none of them entered an appearance on his behalf. Upon learning this, the court did not inquire whether the failure to have an attorney was beyond Livingston's control. Although the court's reference to Livingston's "opportunity" and "option" indicates there may have been some off-record discussion as to why he was not represented, we cannot assume the court inquired and satisfied itself that Livingston was unrepresented as a result of his own choice or lack of diligence. " 'Waiver of counsel . . . cannot be presumed from a silent record.' " *Waire v. State*, 211 Ga. App. 69, 70 (438 SE2d 142) (1993). The court's action was short of its duty.

This case must be remanded for the court to make a finding as to indigence and, depending upon that finding, to exercise discretion as to diligence and the appointment of counsel. If Livingston was entitled to counsel, he is entitled to a new trial; if not, the judgment stands. *Flanagan*, supra at 601.

3. Because Livingston may not be entitled to a new trial, we address his other enumerations, one being that he was deprived of his right to testify in his own behalf. See *Mobley v. State*, 264 Ga. 854, 855-856 (2) (452 SE2d 500) (1995). The record shows otherwise.

During the presentation of the State's evidence the court informed Livingston he had the right to testify in his own behalf. When asked at relevant points whether he would be testifying, Livingston either stated he would not or answered that he had not yet decided. At no time did he express any desire or intention to testify. After the close of the evidence, the court asked whether Livingston wanted the jury charged about his right not to testify and expressed

some surprise that he had not testified. During the charge conference, Livingston adamantly declared he had never announced to anyone whether he intended to testify and he had never formed a plan to testify.

He now contends the court paced the trial in a manner that exhausted him and forced him to choose between testifying and making a closing argument, effectively denying his right to testify. To the contrary, the court never told or even suggested to Livingston that he must choose between the two. There is no indication that the trial was improperly managed timewise. In fact, had Livingston been permitted to present his twenty-five character witnesses, the trial would have been even longer, but the court restricted the number to nine because their testimony was cumulative. Although Livingston did state, after resting his case, that he did not think he could physically concentrate on both testifying and arguing, he never informed the court he was too tired to continue or that fatigue might prevent him from testifying. Nothing in the transcript could reasonably be construed as a request for a recess. Although the trial was held during the course of three and one-half days, there is no indication how long each day's session ran. No error appears. *Johnson v. State*, 208 Ga. App. 453, 454 (4) (430 SE2d 821) (1993).

4. The final enumeration is that the trial court improperly commented on the evidence in violation of OCGA § 17-8-57 when it ruled after Livingston objected to an answer given during his cross-examination of a witness. The record does not show any improper comment; even if there was, the enumeration has not been preserved for appellate review, thus waiving any error. *Walker v. State*, 258 Ga. 443, 444 (3) (a) (370 SE2d 149) (1988).

### Case No. A96A1256

5. Smith's sole enumeration of error is that the evidence was not sufficient to support the conviction under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The evidence is viewed with all reasonable inferences made, and all issues of weight and credibility resolved, in favor of the verdict. Id.; *Patterson v. State*, 181 Ga. App. 68, 69 (2) (351 SE2d 503) (1986).

The victim, a pizza delivery man, testified he arrived at an apartment complex to make a delivery. As he approached the apartment where the pizza was to be delivered, he noticed a group of men in the complex's common area, one of whom went behind a wall. The victim delivered the pizza, telling the recipient he thought he might be robbed. As he was leaving the complex, the man he saw leave the group emerged, pointed a silver-colored gun at the victim's face, and told him to approach, but the victim backed away. The robber told

him not to try it, and the victim stated he knew what the robber wanted and the gun was not needed. The victim tossed the robber a bag containing money, and the robber caught it. The robber told the victim to turn and walk the other way, which he did.

Johnson testified that he was in a group of men at the complex when the victim arrived. Smith had a silver-colored gun resting on a stump, announced an intention to rob the delivery man, picked something up off the stump, and went around the building. Johnson saw the victim toss the money bag to the ground but could not see the person facing the victim because of a wall. He later saw money in Smith's hand, and the gun was not on the stump after the robbery. A detective testified that Johnson told him he had seen Smith place a gun to the victim's head.

Smith argues there was no evidence identifying him as the robber, but the victim clearly identified Smith in court as the perpetrator. Smith also contends there was insufficient evidence he took "property of another from the person or immediate presence of another." See OCGA § 16-8-41 (a). Although he does not explain this contention, it apparently refers to Johnson's testimony that he only saw the victim throw the money bag to the ground, but he did not see anyone pick it up. Whether the jury credited the victim's testimony that he tossed the bag to Smith, who caught it, or whether it believed Johnson and took into account the circumstantial evidence, the evidence was sufficient.

*Judgment affirmed in part and case remanded with direction in Case No. A96A0679. Judgment affirmed in Case No. A96A1256. Birdsong, P. J., Pope, P. J., Andrews, Johnson, Blackburn and Smith, JJ., concur. McMurray, P. J., and Ruffin, J., concur specially.*

RUFFIN, Judge, concurring specially.

If, as former Chief Justice Roger J. Traynor of the California Supreme Court has said, "errors are the insects in the world of law . . .," where such errors are harmful, appellate courts must be the exterminators. Although it is a bit embarrassing to extinguish a fire of your own making, it is appropriate to do so when one is wiser today than yesterday. Accordingly, we should bid adieu to *Staton v. State*, 219 Ga. App. 316 (464 SE2d 888) (1995).

After further consideration of *Rowland v. State*, 264 Ga. 872 (1) (452 SE2d 756) (1995), I concur with the majority's opinion but write separately regarding Division 1 to address the majority's distinction between premature notices of appeal and late notices of appeal. In my opinion, *Gillen v. Bostick*, 234 Ga. 308, 310-311 (1) (215 SE2d 676) (1975), mandates this holding, and, therefore, I concur in the majority's opinion. However, I am not convinced that *Rowland* did not implicitly overrule *Gillen*.

*Rowland* presented the Supreme Court with only the issue of notices of appeal filed after the expiration of the statutory period. The Supreme Court did not specifically address the issue of premature appeals or mention *Gillen*. Hence, our use of *Rowland* to dismiss the premature appeal in *Staton v. State*, supra at 317, may itself have been premature. While *Rowland* did not address the issue before us and did not overrule the line of cases following *Gillen*, I still believe that the Court's rationale in *Rowland* should apply to premature notices of appeal.

In *Rowland*, the Supreme Court held that our practice of ruling on late-filed appeals, while laudable, "requires the appellate court to ignore jurisdictional and procedural statutes and rules." 264 Ga. at 874. Its observation surely applies to our granting of appeals that have been filed prematurely. Moreover, whether the appeal is filed prematurely or after the 30-day period for appeal has expired, a criminal appellant still will be entitled to an out-of-time appeal. If the case ultimately is dismissed for failure to file the notice of appeal within the statutory 30-day period, there is no reason a party cannot request an out-of-time appeal even if that party was dismissed because he filed the appeal too early rather than too late. "Since an out-of-time appeal is the remedy for a frustrated right of appeal, we may dismiss an appeal of right for failure to follow appellate procedural prerequisites. [Cit.]" Id. at 875. Thus, to the extent that our consideration of premature notices of appeal has its basis in the due process and fairness concerns which *Rowland* holds need not be considered, we should reconsider our rulings in this line of cases.

I disagree with the majority's conclusion that premature notices of appeal are "not jurisdictionally defective but only procedurally irregular." If the notice of appeal does not comply with OCGA § 5-6-38 (a), it is defective. Period. It is not the Court's job to decide that one failure to comply is a defect and another is merely an irregularity. Moreover, if there is to be an exception to the statute, the legislature should create the exception rather than this Court.

Nevertheless, because *Rowland* did not address the issue of premature appeals and because *Rowland* did not overrule that line of cases following *Gillen*, I believe this Court is compelled to follow the rule in *Gillen* until the Supreme Court has an opportunity to address the issue before us.

I am authorized to state that Presiding Judge McMurray joins in this special concurrence.

DECIDED MAY 29, 1996.

*Debra G. Gomez*, for appellant (case no. A96A0679).

*Janet S. Willy*, for appellant (case no. A96A1256).

*Charles H. Weston, District Attorney, Robin O. Flanders, Laura D. Hogue, Assistant District Attorneys*, for appellee (case no. A96A0679).

*Harry N. Gordon, District Attorney, John A. Pursley, Assistant District Attorney*, for appellee (case no. A96A1256).