S06A1532. GUYTON v. THE STATE.
S06A1533. COOPER v. THE STATE.
S06A1534. JONES v. THE STATE.
S06A1535. KING v. THE STATE.
S06A1537. PRESTON v. THE STATE.

(642 SE2d 67)

THOMPSON, Justice.

Defendants Lajuan Guyton, Maurice Cooper, Frank Lewis Jones, Stanley King, and Barry Preston were convicted of felony murder and burglary in connection with the shooting death of Frederick Taylor.[1] These appeals followed. Finding no error, we affirm.

1. Viewing the evidence in a light favorable to the verdict, as we are bound to do, we find the following: Defendants Guyton, Cooper, Jones, King and Preston drove from Savannah to Brunswick in a Chevrolet Tahoe. Marti Mincey went with them. Terrence White and Sukille Miller followed the Tahoe in a Chevrolet Malibu owned by Guyton's mother. White drove the Malibu at Guyton's request. The two groups stayed in touch by cell phone as they traveled.

---

[1] The crimes occurred on August 10, 2001. Defendants were indicted on November 20, 2002, and charged with burglary, armed robbery, and felony murder (predicated upon the underlying felony of armed robbery). A joint trial commenced on March 22, 2004, and on April 1, the jury found each defendant guilty of all counts. The trial court sentenced each defendant to life in prison for felony murder and 20 years (consecutive) for burglary. Defendants Guyton, Cooper and Jones filed timely notices of appeal. Defendants King and Preston filed timely motions for new trial, which were denied on April 7, 2006. Notices of appeal were filed timely by defendants King and Preston. The cases were docketed in this Court on May 16, 2006, and submitted for decision on the briefs on July 6, 2006.

When they arrived in Brunswick, the Malibu pulled past the Tahoe, stopped, and backed up. The trunk was opened revealing rifles, shotguns, pistols, masks, black clothing and bullet-proof vests. Defendants removed these items from the trunk, returned with them to the Tahoe, and followed the Malibu to the home of Frederick Taylor. The Malibu continued down the road and waited; the Tahoe was stopped outside Taylor's house. Defendants exited the Tahoe, broke down Taylor's door, entered the house, and fired their weapons, killing Taylor.

Hours later, Savannah police found the Tahoe and Malibu parked at the home of White's sister. There the police found Guyton and Jones; Jones had a handgun, a cell phone, and $1,600 on his person. In the Tahoe and Malibu, the officers discovered a pistol, a "Franklin" black glove and bullets which were consistent with bullets found at the crime scene. In a storage area adjacent to the house, the police found black clothing, "Franklin" black gloves, armored vests, rifles, and a shotgun. Ballistics tests proved that the rifles were used to fire the bullets in Taylor's house and that one of those rifles, an AK-47, was used to kill Taylor.

At trial the owner of a military surplus store testified that Guyton purchased the AK-47 and a three-holed knit mask. Taylor's girlfriend testified that she hid under the bed with her baby when the intrusion took place; that the intruders wore dark clothing, masks and gloves; and that they carried weapons. However, she was unable to identify any of the intruders.

Terrence White testified that on the night in question, eight men gathered in the front of his sister's house: he, the five defendants, Mincey and Miller. White also averred that the eight men left the house at the same time. In this regard, he stated that he drove the Malibu with Miller and that six men rode in the Tahoe. In addition, White testified that at some point on the journey, Miller and Mincey changed places; that the men who were then in the Tahoe donned black clothing, body armor, gloves and masks; and that they grabbed weapons. White added that he continued driving the Malibu — with Mincey navigating — until they arrived at Taylor's house; that, at that point, Mincey told White to tap the brakes; that White and Mincey then drove up the street and waited until they received a cellular phone call; that they returned to Savannah where they met with the rest of the men at the home of Guyton's father; that he then dropped off Mincey and drove the Malibu to his (White's) sister's house; and that Guyton came to his sister's house to retrieve the Malibu when the police arrived.

Marti Mincey testified that he left Savannah in the Tahoe with defendants Guyton, Cooper, Jones, and Preston, as well as another man with a husky build unknown to him. He also testified that during

that trip, he borrowed someone's cellular telephone to call his brother-in-law. Cellular telephone records demonstrated that defendant King's mother's cellular telephone was used to call Mincey's brother-in-law at the approximate time in question.

The evidence is sufficient to enable any rational trier of fact to find defendants guilty beyond a reasonable doubt of felony murder and burglary. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The State introduced both direct and circumstantial evidence to prove that defendants rode in the Tahoe and participated in the invasion of Taylor's house. Although much of the State's case depended on accomplice testimony, the State presented additional corroborating evidence (e.g., black clothing, weapons, cellular telephone records) tending to connect defendants to the crime. See *Smith v. State*, 238 Ga. 640, 641 (235 SE2d 17) (1977) (slight evidence from extraneous source identifying defendant as a participant in the crime is sufficient to corroborate accomplice testimony). Besides, the testimony of White was sufficiently corroborated by the testimony of Mincey, and vice versa. See *Pope v. State*, 171 Ga. 655, 660 (156 SE 599) (1930) (defendant may be convicted on testimony of accomplice even though the only corroboration of the testimony is the testimony of another accomplice).

The mere fact that Mincey was unable to identify King as one of the passengers in the Tahoe is of no consequence. White testified that King was one of the eight men who rendezvoused at White's sister's house; that all of the men left together and that six of them rode in the Tahoe. Mincey identified five of the six men and gave a general description of the sixth; he added that he used a cellular phone during the trip and that that phone belonged to King's mother.

2. The trial court did not err in charging the jury that it should attempt to reconcile conflicting testimony without ascribing false statements to any witness, but that, if it cannot do that, it must determine which witnesses are best entitled to be believed and which are not. *Sedlak v. State*, 275 Ga. 746, 748 (571 SE2d 721) (2002). The charge was not a "presumption of truthfulness" charge. See *Noggle v. State*, 256 Ga. 383 (349 SE2d 175) (1986). It did not require the jury to believe the testimony of Mincey, White, or any other witness, whether impeached or unimpeached. *Mallory v. State*, 271 Ga. 150 (517 SE2d 780) (1999).

3. Our courts have long held that, if it is supported by the evidence, a jury charge may be given on conspiracy even though the defendant was not indicted for that crime. *Mangum v. State*, 274 Ga. 573, 578 (3) (d) (555 SE2d 451) (2001); *Parnell v. State*, 260 Ga. App. 213 (581 SE2d 263) (2003). But this is not to say that a court must give an instruction on conspiracy upon the request of the defendant. On the contrary, a defendant is not entitled to an instruction on an

offense for which he has not been charged, unless it is a lesser included offense. *Belton v. State*, 270 Ga. 671, 675 (512 SE2d 614) (1999); *Hemphill v. State*, 242 Ga. App. 751 (531 SE2d 150) (2000). Defendants were not indicted for conspiracy, and that offense is not included in felony murder or burglary. See generally OCGA § 16-1-6; *Orkin v. State*, 236 Ga. 176, 178 (223 SE2d 61) (1976) (crime of conspiracy can only be defined in conjunction with a substantive crime involved in the conspiracy). It follows that the trial court did not err in refusing to give a requested charge on conspiracy to commit a crime.

4. Defendant Preston claims the trial court erred in permitting the State to introduce similar transaction evidence against defendant Cooper.[2] We disagree. Even if it can be said that the similar transaction evidence against Cooper was not sufficiently similar to the other evidence introduced against Cooper at trial, Preston has no grounds to complain because the similar transaction evidence did not implicate Preston. Moreover, when the evidence was admitted the trial court gave a proper limiting instruction concerning the jury's ability to use the similar transaction evidence against Cooper only. See generally *Murphy v. State*, 270 Ga. 72 (508 SE2d 399) (1998).

5. In the same vein, we also find that, contrary to Preston's assertion, the trial court did not abuse its discretion in failing to sever Preston's trial from Cooper's. *Short v. State*, 256 Ga. 165, 168 (4) (345 SE2d 340) (1986). Simply put, Preston has not demonstrated that the trial court's refusal to sever harmed him in such a way as to amount to a denial of due process. *Moss v. State*, 275 Ga. 96, 99 (2) (561 SE2d 382) (2002).

6. Defendants expressly authorized counsel to waive their right to be present when the court met with and interviewed prospective jurors, including jurors who desired to be excused for reasons of hardship. In addition, after consulting with counsel, each defendant executed a written waiver of his right to be present "during the preliminary selection of available jurors." Thereafter, in the absence of defendants, all counsel agreed to release the jurors who wanted to be excused since enough other jurors remained to facilitate the selection process. Defendant Preston asserts his right to be present during this time was violated because (1) his waiver was not made knowingly and voluntarily and (2) the court and counsel discussed other matters not covered by the waiver. We cannot accept this assertion.

---

[2] The State demonstrated that on the night of October 2, 2001, a masked intruder kicked down the front door of a couple's home, entered the bedroom, and opened fire, injuring the wife; that the husband returned fire and the intruder fled; and that a black ski mask and Cooper's blood were found at the scene.

The record shows that before waiving his right to be present, Preston conferred with counsel for at least 14 minutes, during which time counsel fully explained Preston's right to be present and the nature of the proceedings which were about to take place in Preston's absence. At the hearing on the motion for a new trial, counsel testified that when they conferred, Preston asked intelligent questions and appeared to understand that he was waiving his right to be in the courtroom during the preliminary selection process. Moreover, in our view, the matters which the court and counsel discussed during Preston's absence — including jury selection scheduling and procedure, and the number of strikes to be allotted to defendants — pertained to preliminary jury selection issues, and were, therefore, contemplated by the waiver. See generally *Pennie v. State*, 271 Ga. 419 (520 SE2d 448) (1999); *Wilson v. State*, 212 Ga. 73 (90 SE2d 557) (1955).

7. It was not incumbent upon the trial court to give a curative instruction or to grant a mistrial sua sponte, when in his opening statement the prosecutor referred to a "rash of home invasion armed robberies" in Savannah.[3] The trial court sustained an objection to the statement. If defendant Preston wanted the court to take further action, he should have pressed the issue. Because he failed to do so, he cannot complain now. *Potts v. State*, 259 Ga. 96, 101 (9) (376 SE2d 851) (1989).

8. Later in his opening statement, the prosecutor stated that one of the arresting officers recognized defendant Guyton. This remark did not place Guyton's character in evidence. *Gober v. State*, 264 Ga. 226, 229 (5) (443 SE2d 616) (1994).

9. Defendants Preston, Cooper and Jones assert the trial court erred in refusing to permit them to cross-examine Terrence White by playing recorded statements which seemed to contradict White's testimony. However, any error in this regard is harmless, see *Givens v. State*, 264 Ga. 522, 523 (2) (448 SE2d 687) (1994), because four days after White testified the trial court reversed itself and determined that the tape-recorded statements could be used. Thus, although they declined to do so, defendants could have used the recorded statements to recall White for cross-examination at that time. Moreover, both the prosecution and the defense brought the inconsistencies in White's testimony to light by other means. See *Carswell v. State*, 268 Ga. 531, 534 (5) (491 SE2d 343) (1997).

10. Defendant Preston claims his trial counsel rendered ineffective assistance during the course of the trial and at the sentencing

---

[3] The statement was made to explain how police came to be in the area when the initial arrests were made.

hearing. As to counsel's trial performance, Preston claims that, because counsel failed to adequately investigate the similar transaction evidence against Cooper, as well as the evidence against Preston, he was unable to pursue a reasonable trial strategy. With regard to the sentencing hearing, Preston contends counsel was ineffective because he did not investigate mitigation issues, failed to subpoena witnesses and to move for a continuance when they did not appear, did not insist that Preston be given an opportunity to allocute, and sought sentence review prematurely. To prevail on these claims, under the standard set forth in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), Preston must show that his attorney's performance was deficient and that the deficiency prejudiced the defense. *Langlands v. State*, 280 Ga. 799 (3) (633 SE2d 537) (2006). For the reasons which follow, we find these claims to be without merit because Preston did not carry the burden of showing that counsel's performance was deficient in these respects.

(a) Contrary to Preston's assertions, the record demonstrates that trial counsel thoroughly investigated the case against his client. Accord *Bell v. State*, 278 Ga. 69, 72 (6) (597 SE2d 350) (2004).

(b) At trial, Preston's counsel took the position that Mincey was lying to cover up his own involvement in the crimes, and that the evidence did not prove that Preston was a participant. This approach was reasonable trial strategy that any competent attorney would offer under similar circumstances; it was not, therefore, assailable. See *Walker v. State*, 281 Ga. 521, 526 (7) (640 SE2d 274) (2007); *Fuller v. State*, 278 Ga. 812, 814-815 (2) (c) (607 SE2d 581) (2005) (reasonable trial strategies and tactics do not amount to ineffective assistance of counsel).

(c) Trial counsel was not ineffective with regard to the presentation of mitigating evidence at the sentencing hearing. Counsel pointed out that Preston's involvement in the crimes was less than that of his co-defendants; and he emphasized Preston's lack of a violent criminal record.

(d) Counsel cannot be faulted for failing to subpoena witnesses for the sentencing hearing. Counsel had every reason to expect that the witnesses, including Preston's mother and family members, would appear at the sentencing hearing voluntarily. Besides, Preston has failed to demonstrate that he would have received a more lenient sentence if the witnesses were present.

(e) Preston's counsel did not render ineffective assistance because he failed to insist that Preston be afforded an opportunity to address the trial court personally on the subject of sentencing. Counsel spoke at the sentencing hearing on Preston's behalf regarding mitigation and punishment. OCGA § 17-10-2 (a) (2) (defendant or defendant's counsel shall present argument regarding punishment);

*Murray v. State*, 269 Ga. 871, 872 (1) (505 SE2d 746) (1998); *Blue v. State*, 275 Ga. App. 671, 674 (3) (621 SE2d 616) (2005).

(f) Lastly, it cannot be said that Preston's trial counsel rendered ineffective assistance simply because he prematurely filed a motion for sentence review. See OCGA § 17-10-6 (application for review of sentence shall be made within 30 days of the imposition of sentence or the remittitur is made the judgment of the sentencing court, whichever occurs last). Preston has not demonstrated how he was prejudiced by counsel's conduct in this regard. See in a different context, *McCulley v. State*, 273 Ga. 40, 43, n. 3 (537 SE2d 340) (2000) (premature notice of appeal ripened upon filing of sentence); *Livingston v. State*, 221 Ga. App. 563 (1) (472 SE2d 317) (1996) (prematurely filed notice of appeal becomes effective upon filing of judgment or order).

*Judgments affirmed. All the Justices concur.*

DECIDED FEBRUARY 26, 2007 —
RECONSIDERATION DENIED MARCH 27, 2007.

*Newell M. Hamilton, Jr., Anthony L. Harrison*, for appellant (case no. S06A1532).
*Ronald E. Harrison II*, for appellant (case no. S06A1533).
*Grayson P. Lane*, for appellant (case no. S06A1534).
*Alan D. Tucker*, for appellant (case no. S06A1535).
*Kevin R. Gough*, for appellant (case no. S06A1537).
*Stephen D. Kelley, District Attorney, Charles K. Higgins, Leslie K. DeVooght, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Laura D. Dyes, Assistant Attorney General*, for appellee.